**Kaazim Abul UMAR a/k/a W.L. Pittman, Appellant,**

v.

**Wayne SCOTT, David Skelton, Ken Bush, Leslie Woods, William Stephens, Jerry Groom, Stephanie Hanson, Jeffery Smith, Robert Eason, and Joe Sneed, Appellees.**

No. 2–98–203–CV.

Court of Appeals of Texas, Fort Worth.

May 13, 1999.

Publication Ordered June 10, 1999.

---

1. Appellant's new trial motion, on which there was no hearing, did not allege counsel was ineffective.

Kaazim Abul Umar, a/k/a/ W.L. Pittman, Iowa Park, for appellant.

Dan Morales, Atty. Gen., Jorge Vega, First Asst. Atty. Gen., Drew T. Durham, Deputy Atty. Gen., Ann Kraatz, Charles K. Eldred, Asst. Attys. Gen., Austin, for appellee.

PANEL A: CAYCE, C.J.;
LIVINGSTON and BRIGHAM, JJ.

## OPINION

WILLIAM BRIGHAM, Justice.

Appellant, an inmate at the Texas Department of Criminal Justice, Institutional Division, "TDCJ–ID," complains of error in the trial court's grant of summary judgment in favor of Appellees, denying Appellant relief in his suit alleging that certain policies of TDCJ–ID violate his free exercise and equal protection rights. We affirm.

### BACKGROUND

Appellant's original pro se complaint [1] alleges that TDCJ–ID's policy of not allowing inmates to grow beards, except for legitimate medical reasons, violates his free exercise rights under the Religious Freedom Restoration Act,[2] the First and Fourteenth Amendments to the United States Constitution, and section 501.001 of the Texas Government Code. It further alleges that such policy violates his equal protection rights under the Texas Constitution. In a second supplemental petition, Appellant alleges that TDCJ–ID's policy of not allowing "close custody" inmates to attend congregational religious services or religious classes together violates his free exercise and equal protection rights under the United States Constitution, 42 U.S.C. section 1983,[3] and section 501.001 of the Texas Government Code.

Following discovery, Appellees filed motions for summary judgment under rule 166a(c) of the Texas Rules of Civil Procedure, alleging there is no genuine issue as to any material fact as to each of Appellant's claims, and asserting affirmative defenses of qualified and official immunity.

---

1. Appellees Wayne Scott, David Skelton, Ken Bush, Leslie Woods, William Stephens, Jerry Groom, and Stephanie Hanson are named as defendants. Each is sued in his or her individual capacity, and Appellees Wayne Scott and Jerry Groom are also sued in their official capacities. Appellees Jeffery Smith, Robert Eason and Joe Sneed are named as additional defendants in Appellant's first amended complaint, but Appellant does not specify whether he is suing them in their individual or official capacities.

2. The RFRA was held unconstitutional in *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 2172, 138 L.Ed.2d 624 (1997).

3. Appellant also alleged violations under sections 1981, 1985, and 1986, but he did not advance those allegations on appeal.

Appellant filed responses to the motions for summary judgment.

The trial court conducted hearings on the motions for summary judgment, and on June 9, 1998, signed an order granting the motions, dismissing Appellant's action, and finding that Appellees were entitled to immunity. Appellant filed notice of appeal on June 29, 1998.

### ASSIGNMENT OF ERROR

■ Where the trial court's judgment rests upon more than one independent ground or defense, the aggrieved party must assign error to each ground, or the judgment will be affirmed on any ground with merit to which no complaint is made. *See Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995); *Bailey v. Rogers,* 631 S.W.2d 784, 786 (Tex.App.—Austin 1982, no writ); *Hudson v. Buddie's Super Markets, Inc.,* 488 S.W.2d 143, 147–48 (Tex.Civ.App.—Fort Worth 1972, no writ). Where the point on appeal is general, only those particular grounds of error that are specified in the argument and authorities under that point are presented to the appellate court for review. *See Hudson,* 488 S.W.2d at 147.

Appellees' motions for summary judgment are based on the following grounds: (1) the policies complained of do not violate his free exercise rights because they are based on legitimate penological objectives; (2) the policies do not violate Appellant's equal protection rights because close custody inmates of all faiths are treated the same and Appellant cannot prove the prison officials acted with a discriminatory purpose; (3) Appellant has not stated a claim against certain Appellants in alleging they threatened to beat him because they did not like his beard; (4) Appellees are entitled to qualified immunity; and (5) to the extent the Appellees are sued in their official capacities, they are entitled to official immunity.

The summary judgment states that Appellees' motions for summary judgment are granted. It also contains an order that Appellees "are entitled [to] immunity with respect to each of the [Appellant's] claims against them." Appellant's sole point of error is: "Appellant's objection to the Appellee's [sic] summary judgment motion and the trial court abused it's [sic] discretion granting the Appellee's [sic] summary judgment motion and in this case." In his argument and authorities under that point, Appellant did not assign error to the trial court's finding that Appellees are entitled to immunity. Therefore, Appellant has waived his right to complain of the ruling to which no error was assigned. *See Bailey,* 631 S.W.2d at 786; *Hudson,* 488 S.W.2d at 147. If Appellees' contention that they are entitled to immunity from suit is meritorious, we must affirm.

### STANDARD OF REVIEW

■ A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *See Friendswood Dev. Co. v. McDade + Co.,* 926 S.W.2d 280, 282 (Tex.1996). To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *See Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex.1996). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Friendswood Dev. Co.,* 926 S.W.2d at 282. We will view the evidence and its reasonable inferences in a light most favorable to the nonmovant. *See Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965).

### QUALIFIED IMMUNITY

The doctrine of qualified immunity shields individual government officials performing discretionary functions from liability for civil damages, so long as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would be aware. *See Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Its purpose is to protect public officials from undue interference with their duties and from potentially disabling threats of liability. *See id.* at 819, 102 S.Ct. at 2739.

■ To prevent application of qualified immunity, the right asserted must be established at the time of the alleged violation. *See Elder v. Holloway,* 510 U.S. 510, 514–16, 114 S.Ct. 1019, 1022–23, 127 L.Ed.2d 344 (1994). If the parameters of the asserted right are not so clear that a reasonable official would understand that what he is doing violates that right, then qualified immunity will be applied. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). To determine whether an official can be held liable for taking an alleged unlawful action requires an assessment of the "objective legal reasonableness" of the action in light of the legal rules that were clearly established at the time the action was taken. *See id.* at 639, 107 S.Ct. at 3039. Thus, qualified immunity is a powerful shield that will protect "all but the plainly incompetent or those who knowingly violate the law." *Emerson v. Borland,* 927 S.W.2d 709, 719 (Tex.App.—Austin 1996, writ denied), *cert. denied,* —— U.S. ——, 118 S.Ct. 174, 139 L.Ed.2d 116 (1997).

### OFFICIAL IMMUNITY

■ It was Appellees' burden to establish each element of official immunity, an affirmative defense. *See City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). Official immunity is a common-law defense that shields government officers and employees from personal liability in performing (1) discretionary duties (2) in good faith (3) within the scope of their authority. *See id.* The purpose of the doctrine is to protect public officers from civil liability for conduct that would

otherwise be actionable. *See id.* at 653–54. In order to abolish official immunity altogether in a particular context, such intent must be clearly expressed by the legislature. *See Davis v. Klevenhagen,* 971 S.W.2d 111, 113–14 (Tex.App.—Houston [14 th Dist.] 1998, no pet.).

### THE PROHIBITION OF BEARDS

■ Addressing Appellant's claim that the policy of not allowing inmates to grow beards, except for legitimate medical reasons, violates his free exercise rights, we determine from the summary judgment proof that valid penological objectives exist for TDCJ–ID's prohibition on beards, and that such regulation is rationally related to legitimate penological objectives. *See O'Lone v. Estate of Shabazz,* 482 U.S. 342, 350–52, 107 S.Ct. 2400, 2405–06, 96 L.Ed.2d 282 (1987) (discussing factors relevant in a determination of whether a policy is reasonably related to penological interests); *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). Furthermore, we hold that Appellees' actions in complying with the prohibition were objectively reasonable, and Appellees' have established, as a matter of law, their entitlement to qualified immunity.

We turn to Appellant's argument that the no-beard policy violates the Equal Protection Clause, which guarantees that "all persons similarly situated should be treated alike." *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3253–54, 87 L.Ed.2d 313 (1985); *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). Proof of discriminatory intent or purpose is required to show an equal protection violation. If a classification is drawn around a suspect class or affects a fundamental right, a reason to suspect discriminatory intent arises. *See Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 272, 99 S.Ct. 2282, 2292–93, 60 L.Ed.2d 870 (1979), *aff'd,* 445 U.S. 901, 100 S.Ct. 1075, 63 L.Ed.2d 317 (1980). The burden then shifts to the state to

justify its action beyond the typical showing that a rational relationship exists between the classification and the governmental interest. Otherwise, state action is presumed to be constitutional and will be upheld if a classification drawn by state action is rationally related to a legitimate state interest. *See Cleburne*, 473 U.S. at 440, 105 S.Ct. at 3254–55.

■ With regard to Appellant's gender-based equal protection claim that female inmates are not required to shave their facial hair, Appellant has produced no summary judgment evidence of female inmates with facial hair, and thus, no evidence that males and females are treated differently. As for his other equal protection challenges to the no-beard policy, Appellant has not demonstrated that he is a member of any suspect class. Furthermore, we hold that Appellees' actions in complying with the policies requiring inmates to be clean-shaven were objectively reasonable, and Appellees' have established, as a matter of law, their entitlement to qualified immunity.

■ Regarding Appellant's state claim invoking section 501.001 of the Texas Government Code, Appellant neither argues that the legislature has abolished official immunity in this context, nor that Appellee failed to prove all of the elements of official immunity as a matter of law. Therefore, to the extent that Appellees' actions involved discretionary decisions, we hold that Appellees' actions were protected by official immunity.

## CLOSE CUSTODY INMATES AND RELIGIOUS SERVICES

Appellant also argues that the policy of not allowing "close custody" inmates to attend Muslim services known as Jumu'ah and religious study known as Taleem violates his rights to free exercise and equal protection, invoking 42 U.S.C. section 1983, and section 501.001 of the Texas Government Code.

The summary judgment proof describes "close custody" inmates as those who have demonstrated they are unable to comply with rules and strictures of prison environment required to maintain a safe, orderly prison. Appellant was classified as a "close custody" inmate because of major and minor disciplinary infractions committed. Because many of its units do not have the capacity or staffing required to allow close custody inmates to attend congregational religious services, in an effort to treat all inmates and faiths equally, TDCJ–ID prohibits close custody inmates of all religions from attending congregational religious services.

■ Addressing his free exercise claim, we determine from the summary judgment proof that valid penological objectives exist for TDCJ–ID's policy of not allowing "close custody" inmates to attend Jumu'ah and Taleem, and that such regulation is rationally related to legitimate penological objectives. *See O'Lone*, 482 U.S. at 350–52, 107 S.Ct. at 2405. Furthermore, we hold that Appellees' actions in complying with the policy were objectively reasonable, and Appellees' have established, as a matter of law, their entitlement to qualified immunity.

■ Addressing Appellant's claim that this policy violates his equal protection rights, Appellant has not demonstrated that he is a member of any suspect class. Regarding Appellant's state claim invoking section 501.001 of the Texas Government Code, Appellant neither argues that the legislature has abolished official immunity in this context, nor that Appellee failed to prove all of the elements of official immunity as a matter of law. Therefore, to the extent that Appellees' actions with regard to the denial of close custody inmates to attend congregational services involved discretionary decisions, we hold that Appellees' actions were protected by official immunity.

## SOVEREIGN IMMUNITY

The doctrine of sovereign immunity, unless waived, protects the State of Texas, its agencies and its officials, against lawsuits for damages, absent legislative consent to sue the State. *See Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997). We hold that any claim against Appellees in their official capacities is a suit against the State of Texas, and sovereign immunity applies. *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Morris v. Copeland*, 944 S.W.2d 696, 698 (Tex.App.—Corpus Christi 1997, no writ).

## CONCLUSION

Having overruled Appellant's only point, we affirm the trial court's summary judgment.