**INTERNATIONAL ELEVATOR COMPANY, Appellant,**

v.

**Samuel GARCIA, Sr. and Maria Garcia, Appellees.**

No. 01–01–00689–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 9, 2002.

Rehearing Overruled May 30, 2002.

Andrew T. McKinney, IV, McKinney & Cooper, Dean G. Pappas, Phillips & Akers, Houston, Kenneth J. Bower, McLeod, Alexander, Powell & Apffel, P.C., Galveston, for Appellant.

W. Mark Lanier, Kevin P. Parker, Lanier, Parker & Sullivan, P.C., Houston, for Appellee.

Panel consists of Justices TAFT, RADACK, and PRICE.[1]

## OPINION

TIM TAFT, Justice.

This is an accelerated appeal from the trial court's denial of a special appearance filed by appellant, International Elevator Company (International Elevator). In two issues, International Elevator contends the trial court erred in denying its special appearance. In a cross-point, appellees, Samuel Garcia, Sr. and Maria Garcia (collectively, the Garcias), contend the trial court erred in admitting unauthenticated bank records from International Elevator. We reverse.

## Background

On July 19, 1999, Samuel Garcia was injured while on board an elevator lift in Freeport, Texas. Garcia suffered multiple injuries including fractures of his legs, ankles, left knee, patella, and pelvis. He is permanently disabled and cannot walk without the assistance of a walker.

The elevator was manufactured by Viola Industries–Elevator Division, Inc. (Viola Industries), a Kansas corporation owned by Bob Viola and Barry Viola, who are father and son, respectively. On November 22, 1996, Viola Industries sold its assets to International Elevator. The Asset Purchase Agreement (Agreement), conveyed all machinery, equipment, vehicles, and accounts receivables, including accounts receivables of any projects and orders received before December 31, 1996, from Viola Industries to International Elevator. The Agreement stated that International Elevator would not assume any of Viola Industries' debts, obligations, or other liabilities. Viola Industries and International Elevator are Kansas corporations. Garcia is a Texas resident.

On December 2, 1996, Industrial Hoist Maintenance Systems (Industrial Hoist), purchased a deflector sheave and shaft from Viola Industries for the elevator on which Garcia was injured. The Garcias contend the deflector sheave and shaft proximately caused the elevator crash. The parties stipulated that general jurisdiction was not at issue, and the Garcias asserted only specific jurisdiction at the special appearance hearing and continue that contention on appeal.

International Elevator contends it is a non-resident and does not have sufficient minimum contacts with Texas to invoke specific jurisdiction. International Elevator contends it did not seek to sell the elevator parts to Industrial Hoist and never sold the parts to Industrial Hoist. In its special appearance, International Elevator relied on the deposition testimony of its president, Barry Viola, who stated that International Elevator is a Kansas corporation, and the elevator parts in question

---

**1.** The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

were sold by Viola Industries, not International Elevator. Bob Viola, president of Viola Industries confirmed that the elevator parts were sold by Viola Industries, and not International Elevator. International Elevator also produced a check from Industrial Hoist paid to Viola Industries in the amount of $148.62, the amount of the elevator parts in question. International Elevator also produced its bank accounts that did not reveal a payment from Industrial Hoist for this amount.

## Standard of Review

■■■ The burden of proof is on the non-resident to negate all possible grounds for personal jurisdiction. *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985); *Garner v. Furmanite Australia Pty., Ltd.,* 966 S.W.2d 798, 802 (Tex. App.-Houston [1st Dist.] 1998, pet. denied). Existence of personal jurisdiction is a question of law, but that determination must sometimes be preceded by the resolution of underlying facts. *Preussag Aktiengesellschaft v. Coleman,* 16 S.W.3d 110, 113 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.); *James v. Illinois Cent. R.R. Co.,* 965 S.W.2d 594, 596 (Tex.App.-Houston [1st Dist.] 1998, no pet.). When the trial court does not enter findings of fact or conclusions of law, we resolve factual disputes in favor of the trial court's order and must determine whether the challenged findings are so against the weight and preponderance of the evidence so as to be manifestly erroneous or unjust. *American Type Culture Collection Inc. v. Coleman,* 26 S.W.3d 37, 40 (Tex.App.-Houston [1st Dist.] 2000, pet. granted Nov. 15, 2001); *Minucci v. Sogevalor,* 14 S.W.3d 790, 794 (Tex.App.-Houston [1st Dist.] 2000, no pet.). Because there were no findings of fact and the parties contest the underlying facts, we review the trial court's decision under a factual sufficiency standard. *Minucci,* 14 S.W.3d at 794.

## Jurisdiction

■■■ A court may assert personal jurisdiction over a non-resident defendant only if the requirements of both the United States Constitution and the Texas long-arm statute are satisfied. *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996) (orig.proceeding); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). The Texas long-arm statute allows a Texas court to exercise personal jurisdiction over a non-resident defendant who does business in Texas, and reaches as far as the federal and state constitutional guarantees of due process allow. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997); *Garner v. Furmanite Australia Pty., Ltd.,* 966 S.W.2d 798, 802 (Tex. App.-Houston [1st Dist.] 1998, pet. denied). The requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *CSR Ltd.,* 925 S.W.2d at 594.

■■■ A state may assert personal jurisdiction over a non-resident defendant only if the defendant has some minimum, purposeful contacts with the state, and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Dawson–Austin v. Austin,* 968 S.W.2d 319, 326 (Tex.1998). A non-resident that has purposefully availed itself of the privileges and benefits of conducting business in Texas has sufficient contacts with the forum to confer personal jurisdiction. *CSR Ltd.,* 925 S.W.2d at 594; *Garner,* 966 S.W.2d at 803. A defendant should not, however, be subject to the jurisdiction of a Texas court based upon random, fortuitous, or attenuated contacts. *CSR Ltd.,* 925 S.W.2d at 595. A non-resident defendant must have purposefully

established such minimum contacts with the forum that it could reasonably anticipate being sued there. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

The parties stipulated at the special appearance hearing that general jurisdiction was not being asserted. We will therefore only address specific jurisdiction. *See Pessina v. Rosson,* No. 03–01–00204-CV, slip op. at 5, —— S.W.3d ——, ——, 2001 WL 1423213 (Tex.App.-Austin Nov. 15, 2001, pet. filed Feb. 4, 2002) (addressing only specific jurisdiction when parties stipulated general jurisdiction not at issue in special appearance hearing).

■ Specific jurisdiction is established if the defendant's alleged liability arises from, or is related to, an activity conducted within the forum. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 227 (Tex.1991). The exercise of personal jurisdiction is proper when the contacts proximately result from actions of the non-resident defendant that create a substantial connection with the forum state. *Id.* at 226. If the non-resident defendant has purposefully availed itself of the privileges and benefits of conducting business in a state, it has sufficient contacts to confer personal jurisdiction. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183.

### Evidence of Contacts with Texas

The Garcias contend the trial court had jurisdiction over International Elevator because International Elevator sold the defective elevator parts that caused the injury or because International Elevator acted with Viola Industries under a joint enterprise theory.

### A. Sale of Elevator Parts

■ The Garcias contend the Agreement between Viola Industries and International Elevator proves that International Elevator is liable for all sales orders relating to elevator parts prior to December 31, 1996. The Garcias did not introduce any other evidence that International Elevator sold the defective elevator parts in question. International Elevator responds that it did not assume liabilities from Viola Industries, and International Elevator only had the right to fill any outstanding orders until December 31, 1996. The Agreement was signed November 22, 1996, and the defective elevator parts were sold December 2, 1996. Barry and Bob Viola testified that the Agreement took effect January 1, 1997.

Under Section 6.2 of the Agreement, Viola Industries was responsible for completing all pending contracts. The clause continues to state that, if Viola Industries were unable to complete the pending contracts, International Elevator would complete the jobs. Although the sale of the defective elevator parts occurred before January 1, 1997, there is no evidence that International Elevator sold the elevator parts in question.

Barry Viola, president of International Elevator, testified that International Elevator did not sell the elevator sheave and shaft. Bob Viola, president of Viola Industries, stated Viola Industries sold the elevator parts. International Elevator also produced a check from Industrial Hoist to Viola Industries for the amount of the elevator parts.

Moreover, under Section 6.1 the Agreement, International Elevator did not assume any of Viola Industries' debts, obligations, or other liabilities. A corporation acquiring the assets of a selling corporation incurs no liability of the selling corporation unless the acquiring corporation expressly assumes that liability. TEX. BUS. CORP. ACT ANN. Art. 5.10(B)(2) (Vernon

Supp.2002). Therefore, International Elevator cannot be held liable for any of Viola Industries' liabilities under the Agreement.

Although the Agreement appears to give International Elevator the right to assume sales orders placed before December 31, 1996, all the evidence presented at the special appearance hearing indicated that Viola Industries sold the elevator parts in question. Bob Viola stated that Viola Industries sold the parts in question. Industrial Hoist paid Viola Industries $148.62 for the parts in question. International Elevator denies it sold the parts, and the only evidence of the transaction indicates Viola Industries sold the parts in question.

We hold that the great weight and preponderance of the evidence shows that International Elevator did not sell the elevator parts, thereby negating the sale as a basis for an assertion of specific jurisdiction.

## B. Joint Enterprise Theory

In the alternative, the Garcias contend that, if Viola Industries sold the elevator parts in question, Viola Industries and International Elevator were engaged in a joint enterprise, and that International Elevator is subject to the jurisdiction of Texas on that basis.

■■■ Joint enterprise liability renders each party an agent of the other, and, thus, holds each responsible for the negligent act of the other. *Texas Dept. of Transp. v. Able,* 35 S.W.3d 608, 613 (Tex. 2000) (citing *Shoemaker v. Estate of Whistler,* 513 S.W.2d 10, 14 (Tex.1974)). The elements of a joint enterprise are: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right

of control. *Id.* at 613 (citing to RESTATEMENT (SECOND) OF TORTS § 491 cmt. c (1965); *Blount v. Bordens Inc.,* 910 S.W.2d 931, 933 (Tex.1995); *Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 718 (Tex.1995)).

■■■ Neither party has cited a case, nor can we identify any authority, that addresses personal jurisdiction based on a joint enterprise theory. International Elevator contends Texas has specifically rejected the argument that a non-resident's contacts may be imputed to another non-resident to support personal jurisdiction. *See National Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 773 (Tex.1995). We agree.

The record here shows no evidence of any factors of a joint enterprise. International Elevator and Viola Industries did not have an agreement, express or implied, that demonstrated a common purpose, a pecuniary interest, or an equal right to vote in the enterprise. *See Able,* 35 S.W.3d at 613. To the contrary, Viola Industries sold all of its assets to International Elevator and ceased to do business. Moreover, even if the factors of a joint enterprise had been shown, one corporation's actions cannot be imputed to another corporation's actions for the purposes of asserting personal jurisdiction. *Gibson,* 897 S.W.2d at 773.

We conclude that International Elevator has negated the joint enterprise theory as a basis for asserting specific jurisdiction. Under a factual sufficiency review, we hold that the trial court's finding was so against the weight and preponderance of the evidence that it was manifestly erroneous and unjust.

## C. The Garcias' Cross–Point

In their cross-point, the Garcias contend the trial court erred in admitting bank

records of International Elevator's accounts at Home National Bank in Arkansas City, Kansas. The bank records were 20 pages of deposit slips made in January and February of 1999. The Garcias contend the bank records were not properly authenticated and contain inadmissible hearsay. In addition, the Garcias contend they were not given the opportunity to inspect those records. The Garcias do not contest the admissibility of the check from Industrial Hoist to Viola Industries.

We need not address this issue because it is not necessary to rely on these bank records from Home National Bank to negate all grounds for asserting personal jurisdiction. First, the Agreement and Texas law clearly state that a corporation acquiring assets cannot be held liable for a selling corporation's liabilities unless the acquiring corporation specifically assumes those liabilities. The testimonies of the presidents of Viola Industries and International Elevator indicate that Viola Industries sold the elevator parts in question. Moreover, the check from Industrial Hoist to Viola Industries supports the conclusion that Viola Industries sold the parts in question and received payment for the parts. We hold that all of the evidence indicates Viola Industries sold the parts in question, and any error in admitting the bank records was harmless.

Accordingly, we overrule the Garcias' cross-point.

### Conclusion

Based on the great weight and preponderance of the evidence, the trial court's denial of International Elevator's special appearance was erroneous as a matter of law. We reverse the judgment of the trial court, and render judgment dismissing, without prejudice, appellant, International Elevator Company, from this cause.