Richard L. CARONE, Appellant,

v.

RETAMCO OPERATING,
INC., Appellee.

No. 04–03–00821–CV.

Court of Appeals of Texas,
San Antonio.

March 24, 2004.

Supplemental Opinion on Denial of
Rehearing April 28, 2004.

Rehearing Overruled May 25, 2004.

Ricardo G. Cedillo, Jason R. Cliffe, Ryan J. Tucker, Les J. Streiber, III, Davis, Cedillo & Mendoza, Inc., San Antonio, for appellant.

James L. Drought, Calhoun Bobbitt, Drought, Drought & Bobbitt, L.L.P., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by ALMA L. LÓPEZ, Chief Justice.

Richard L. Carone ("Carone") appeals the trial court's order denying his special appearance. Carone contends that the trial court erred because the pleadings failed to support an assertion of personal jurisdiction, Carone did not have the requisite minimum contacts with Texas, and the exercise of jurisdiction over Carone does not comport with "fair play and substantial justice." Carone also contends that the trial court erroneously admitted certain evidence. In addition to challenging each of Carone's issues, Retamco Operating, Inc. ("ROI") asserts that Carone waived his special appearance. We reverse the trial court's order denying Carone's special appearance, and we dismiss all claims against Carone.

### BACKGROUND

Based on the allegations in ROI's petition, ROI entered into a Purchase Agreement with PNB Securities Corp. ("PNB") in 1984. Pursuant to the agreement, ROI sold numerous oil and gas properties located in Texas and elsewhere to PNB. At the time, PNB was a subsidiary of Security Pacific National Bank, N.A. ("Security Pacific"), and ROI had a banking relationship with Security Pacific. In exchange for selling PNB the properties, ROI was given various royalties and other rights with regard to operating the properties and drilling new wells. As part of the agreement, PNB was required to prepare and record, in all appropriate counties, a document identifying and describing ROI's rights in the various properties.

In 1993, PNB sold some of the properties conveyed to it by ROI to Paradigm Oil, Inc. ("Paradigm"). These properties were located in Texas. Under the terms of the 1984 and 1993 agreements, Paradigm was required to perform PNB's obligations to ROI as set forth in the 1984 agreement. In 1998, PNB sold properties to Finley Oil Well Service, Inc. ("Finley") and Icenine Investments, LLC ("Icenine"). Pacific Operators, Inc. ("Pacific Operators") and Pacific Operators of Texas, Inc. ("Pacific Texas") operated some of the properties at issue.

ROI subsequently filed suit alleging numerous causes of action against various defendants. First, ROI sued PNB, Paradigm, Finley, and Icenine for breach of contract and fraud. In addition, ROI alleged that PNB, Paradigm, Finley, Icenine, Pacific Operators and/or Pacific Texas failed to provide appropriate accounting for ROI's royalties as required by the 1984 agreement. ROI further alleged that Bank of America and its predecessors (including Security Pacific), PNB, Paradigm, Finley, Icenine, Pacific Operators, and Pacific Texas failed to pay or underpaid royalties owed to ROI. Finally, ROI alleged that PNB, Paradigm, Finley, Icenine, Pacific Operators and Pacific Texas failed to furnish notice of termination of leases and failed to provide ROI with the opportunity to receive an assignment of leases as required by the 1984 agreement.

In addition to the breach of contract and fraud claims, ROI also alleged that Carone, together with numerous other defendants: (1) fraudulently concealed matters pertaining to ROI's interests and rights; (2) conspired to perform the acts and omissions and to cause the injuries previously alleged; and (3) engaged in a joint enterprise to obtain various pecuniary advantages by depriving ROI of its rights under the 1984 agreement. ROI also claimed that the corporate entities of PNB, Paradigm, Finley, Icenine, Pacific Operators and Pacific Texas should be disregarded under an alter ego theory.

Carone filed a special appearance. Before the hearing on the special appearance, a hearing on a motion for default judgment hearing was held on July 3, 2003.[1] Carone's attorney appeared at the hearing, cross-examined witnesses, and urged the trial court not to grant the default judgment. On September 18, 2003, the trial court conducted a hearing on Carone's special appearance, which it denied.

## IN PERSONAM JURISDICTION

The Texas long-arm statute enables Texas courts to exercise jurisdiction over a nonresident defendant that "does business" in Texas. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex.2002). Personal jurisdiction over nonresident defendants is established when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.* "Although not determinative, foreseeability is an important consideration in deciding whether the nonresident defendant has purposefully established 'minimum contacts' with the forum state." *Id.* "However, a defendant should not be subject to a foreign court's jurisdiction based upon 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.*

"Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction." *Id.* at 795–96. "Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum." *Id.* at 796. For example, specific jurisdiction is established if the defendant committed a tort in whole or in part in Texas. Tex. Civ. Prac. & Rem.Code Ann. § 17.042(2) (Vernon 1997). "In contrast, general jurisdiction is present when a defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities con-

---

1. The Honorable John Gabriel presided over the hearing on the special appearance. The

Honorable Michael Peden presided over the default judgment hearing.

ducted within the forum state." *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d at 796.

## STANDARD OF REVIEW

 Whether a court has personal jurisdiction over a defendant is a question of law; however, the trial court frequently must resolve questions of fact before deciding the jurisdictional question. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d at 794. On appeal, we review the findings of fact for legal and factual sufficiency, but we review the conclusions of law drawn from those facts *de novo. See id.* If we determine that a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law will not require reversal. *Id.* "When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied." *Id.* at 795. "When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court." *Id.*

"For legal sufficiency points, if there is more than a scintilla of evidence to support the finding, the no evidence challenge fails." *Id.* at 795. For factual sufficiency points, we examine all evidence in the record and reverse only when the finding is so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. *Shapolsky v. Brewton,* 56 S.W.3d 120, 128 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

## WAIVER

 ROI asserts that Carone failed to assign any error to or raise an issue regarding one of the possible bases for the trial court's order denying Carone's special appearance. Specifically, ROI contends that Carone failed to raise any issue in its brief contending that the trial court erred in denying his special appearance on the basis that the special appearance was waived. Carone responds to the issue in his reply brief and cites a case to support his contention that briefing the issue in his reply brief should be sufficient. In the alternative, Carone requests an opportunity to amend his original brief to include his argument against waiver.

 Generally, when a trial court's judgment rests upon more than one independent ground or defense, the aggrieved party must assign error to each ground, or the judgment will be affirmed on any ground with merit to which no complaint is made. *Star-Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995) (summary judgment); *Umar v. Scott,* 991 S.W.2d 512, 515 (Tex.App.-Fort Worth 1999, no pet.) (summary judgment); *Hixson v. Pride of Texas Dist. Co.,* 683 S.W.2d 173, 176 (Tex. App.-Fort Worth 1985, no writ) (jury trial). However, in *McKelvy v. Barber,* the Texas Supreme Court addressed a situation in which the appellee's brief noted the appellant's failure to address an independent ground that would support the judgment. 381 S.W.2d 59, 62 (Tex.1964). The court noted, "Petitioner responded with an extended discussion of the question in his reply brief, and respondent then filed an additional reply brief dealing only with that issue. The Court of Civil Appeals did not affirm on the theory that petitioner had waived the right to complain of any error [with regard to that ground]. On the contrary, it considered the question on the merits, concluded that the position taken by the respondent was sound, and accordingly affirmed the judgment.... After a point of law has thus been brief[ed], we think it should be treated as having been

properly presented for decision at the intermediate court level even though not raised by a formal point of error in appellant's brief." *Id.* Accordingly, we will treat the issue as having been properly presented and consider the merits of whether Carone waived his special appearance.

ROI contends that Carone waived his special appearance by participating at the hearing on the motion for default judgment. Carone's attorney, William C. Meier, was present at the default judgment hearing. Meier had just entered a notice of appearance as Carone's attorney. A default judgment was being sought against Paradigm, Pacific Operators, and Pacific Texas. A prior default judgment against the same defendants based on discovery abuse had been set aside, but a new hearing had been scheduled on a motion for sanctions based on the discovery abuse. An agreed order was entered at the time the prior default judgment was set aside that granted sanctions and specified the discovery actions to be taken by the three entities. The motion for default judgment was based on the entities' failure to comply with the agreed order and continued discovery abuse.

During the default judgment hearing, one of ROI's co-counsel testified regarding the discovery abuse. The attorney for the three entities then cross-examined ROI's co-counsel regarding the nature of the contacts that were made between the two attorneys regarding the discovery issues. After the cross-examination, Carone's attorney proceeded to cross-examine the witness, asking questions regarding the ownership of the entities and ROI's contact with other attorneys who previously represented Carone. After Carone's attorney asked several questions, ROI's attorney objected to the questioning, stating "This motion does not involve his client." Carone's attorney countered that because

ROI was alleging alter ego, a default judgment against the three entities could expose Carone to liability. The trial court sustained the objection. Carone's attorney then asked whether the motion for default judgment applied to Carone. The witness responded that the default applied only to the three named entities. During closing argument, Carone's attorney repeatedly urged the trial court not to enter a default judgment but to proceed with a trial on the merits. To determine whether a party has made a voluntary appearance, the nature and quality of the party's activities must be examined. *Serna v. Webster,* 908 S.W.2d 487, 492 (Tex.App.-San Antonio 1995, no pet.); *Smith v. Amarillo Hosp. Dist.,* 672 S.W.2d 615, 617 (Tex.App.-Amarillo 1984, no writ). A general appearance occurs when a party invokes the judgment of the court in any way on any question other than that of the court's jurisdiction, without being compelled to do so by a previous ruling of the court. *Serna,* 908 S.W.2d at 492; *Smith,* 672 S.W.2d at 617. The emphasis is on affirmative action which impliedly recognizes the court's jurisdiction over the parties, since the mere presence of a party or his attorney in the courtroom at the time of a hearing or a trial, where neither participates in the prosecution or defense of the action, is not an appearance. *Serna,* 908 S.W.2d at 492; *Smith,* 672 S.W.2d at 617. A party who examines witnesses or offers testimony has made a general appearance. *Wichita County v. Robinson,* 155 Tex. 1, 276 S.W.2d 509, 512 (1954); *Bradford v. Bradford,* 971 S.W.2d 595, 598 (Tex.App.-Dallas 1998, no pet.); *Serna,* 908 S.W.2d at 492; *Smith,* 672 S.W.2d at 617. On the other hand, a party who is a silent figurehead in the courtroom, observing the proceedings without participating, has not. *Bradford,* 971 S.W.2d at 598; *Smith,* 672 S.W.2d at 617.

We conclude that Carone did not waive his special appearance for two reasons. First, the default judgment hearing related to discovery in which Carone is permitted to participate. Second, Carone did not request affirmative relief inconsistent with his contention that the trial court lacked jurisdiction over him.

At the special appearance hearing, Carone contended that the default judgment hearing was an extension of the discovery process. Rule 120a of the Texas Rules of Civil Procedure provides that "the taking of depositions, the serving of requests for admissions, and the use of discovery processes, shall not constitute a waiver of such special appearance." TEX.R. CIV. P. 120a. Accordingly, rule 120a "specifically contemplates ongoing discovery by both the party challenging jurisdiction and the party invoking it, and nothing in the rule limits discovery to matters relating to the special appearance." *Case v. Grammar*, 31 S.W.3d 304, 311 (Tex.App.-San Antonio 2000, no pet.). Because the default judgment hearing was based on sanctions for discovery abuse, we conclude that Carone did not waive his special appearance because the hearing related to ongoing discovery in which Carone was permitted to engage under rule 120a.

In addition, Carone did not waive his special appearance because he did not request affirmative relief that was inconsistent with his contention that the trial court did not have jurisdiction over him. In *Dawson–Austin v. Austin*, the Texas Supreme Court rejected an argument that a motion for continuance resulted in a general appearance, stating, "the motion for continuance did not request affirmative relief inconsistent with Dawson Austin's assertion that the district court lacked jurisdiction, which, as we have noted, is the test for a general appearance. Rather, the motion asked the court to defer action on all matters." 968 S.W.2d 319, 323 (Tex.1998). Similarly, the argument by Carone's attorney at the hearing acknowledged only that the trial court had jurisdiction over the corporate entities and recognized that Carone could be potentially liable for the default judgment if Carone was found to be an alter ego of the entities. *See Menetti v. Chavers*, 974 S.W.2d 168, 171–72 (Tex.App.-San Antonio 1998, no pet.) (holding default judgment against corporation established liability and shareholders did not have standing to assert defenses to liability on appeal or complain on appeal about entry of default judgment even though the shareholders could be held liable for the judgment if the corporate veil was pierced); *Klein v. Sporting Goods, Inc.*, 772 S.W.2d 173, 176–77 (Tex. App.-Houston [14th Dist.] 1989, writ denied) (holding shareholder liable for default judgment against corporation where jury found shareholder used corporate fiction as a sham to perpetuate a fraud). Carone's argument did not recognize that the trial court would have jurisdiction to make the alter ego finding against Carone, and Carone did not request any affirmative relief on his own behalf inconsistent with his assertion that the trial court lacked jurisdiction over him. Accordingly, we hold that Carone did not waive his special appearance.

██ ROI asserts two alternative waiver theories; however, ROI acknowledges that it has no authority to support these theories. Rule 38.1(h) of the Texas Rules of Appellate Procedure requires argument to be supported by authority. By failing to cite any authority to support these theories, ROI has not properly presented these alternative waiver theories for our consideration.

### CLAIMS SUPPORTING JURISDICTION

In his first issue, Carone contends that the trial court erroneously denied his spe-

cial appearance because ROI's pleadings fail to support its assertion of personal jurisdiction. Specifically, Carone argues that the claims alleged against him are not independent causes of action or are not claims that can be used to support jurisdiction. ROI responds that Carone misconstrues the claims asserted in the petition. ROI contends that the alter ego and joint enterprise allegations would impose liability on Carone for the breach of contract and fraud claims asserted against the defendant entities.

The plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the provisions of the long-arm statute. *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex.2002). Upon filing a special appearance, the non-resident defendant then assumes the burden to negate all the bases of personal jurisdiction alleged by the plaintiff. *Id.*

### A. Fraudulent Concealment

Fraudulent concealment is a doctrine relating to a statute of limitations defense and is not an independent cause of action. *Walton v. Phillips Petroleum Co.*, 65 S.W.3d 262, 275 (Tex.App.-El Paso 2001, pet. denied); *Mayes v. Stewart*, 11 S.W.3d 440, 452 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). Therefore, ROI's fraudulent concealment allegation does not support an assertion of personal jurisdiction over Carone.

### B. Conspiracy

"Conspiracy as an independent basis for jurisdiction has been criticized as distracting from the ultimate due process inquiry: whether the out-of-state defendant's contact with the forum was such that it should reasonably anticipate being haled into a court in the forum state." *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex.1995). The Texas Supreme Court has declined to recognize the assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state. *Id.* Instead, the Texas Supreme Court has instructed that we must restrict our inquiry to whether the non-resident itself purposefully established minimum contacts such as would satisfy due process. *Id.* Accordingly, the Texas Supreme Court has foreclosed the use of a conspiracy allegation to support jurisdiction. *Michel v. Rocket Eng. Corp.*, 45 S.W.3d 658, 671 (Tex.App.-Fort Worth 2001, no pet.); *see also Lonza AG v. Blum*, 70 S.W.3d 184, 192 (Tex.App.-San Antonio 2001, pet. denied).

### C. Joint Enterprise

Similar to a conspiracy allegation, a joint enterprise claim would distract from the ultimate due process inquiry of whether the non-resident had sufficient minimum contacts with the state. Therefore, we decline to recognize the assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged joint enterprise with a resident in Texas. *Int'l Elevator Co. v. Garcia*, 76 S.W.3d 778, 783 (Tex. App.-Houston [1st Dist.] 2002, no pet.); *see also Gibson*, 897 S.W.2d at 773. Our inquiry is restricted to whether the non-resident itself purposefully established minimum contacts as would satisfy due process. *Gibson*, 897 S.W.2d at 773.

### D. Alter Ego

An allegation of alter ego is a sufficient allegation to support jurisdiction over Carone. Personal jurisdiction may exist over a nonresident defendant based on an alter ego theory. *See BMC Software Belgium, N.V. v. Marchand*, 83

S.W.3d at 798. However, the party asserting alter ego must prove this allegation. *Id.* On appeal, the record must contain evidence to support the trial court's implied finding of alter ego or the trial court's order denying a special appearance will be reversed. *Id.* at 799–800.

In his reply brief, Carone contends that ROI did not plead the alter ego theory against Carone; however, ROI's petition contains the following allegation:

### Alter Egos

35. The corporate entities of PNB, Paradigm, Pacific Operators, Pacific Texas, Finley and Icenine, should be disregarded because there exists such unity between these corporations and their owners that the corporations have ceased to be separate entities, and to hold only the corporations liable would promote injustice. The wrongful conduct of the corporations has primarily benefit[ed] their shareholders, who caused the corporation to be used for wrongful purposes.

Furthermore, during the special appearance hearing, Carone's attorney stated, "I don't know whose turn, or whatever. I would like to address the alter ego argument because I think as we regrouped here and sort of looked at the procedure, they do have an alter ego argument, or rather allegation, in their pleading, and it is proper for you to give that some review." Accordingly, we conclude that ROI's alter ego claim satisfied its initial burden of pleading an allegation sufficient to bring Carone within the provisions of the long-arm statute. *See American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d at 807. We will later address whether ROI met its burden of proving this allegation. *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d at 798.

### EVIDENTIARY CHALLENGES

■■■■ The admission and exclusion of evidence is committed to the trial court's sound discretion; thus, we review Carone's second issue under an abuse of discretion standard. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). A trial court abuses its discretion when it acts without regard to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985).

In his second issue, Carone contends that the trial court erred in admitting ROI's exhibits at the special appearance hearing. The first exhibit consisted of the 141 documents attached to Carone's deemed admissions; however, during the special appearance hearing, the trial court stated that he would only consider the contents of the documents Carone authored. The other documents were only admitted to show that Carone received them, not as proof of their contents. The second exhibit was the asset purchase agreement between PNB and Paradigm Oil. The third exhibit was Carone's answer in the lawsuit pending in Fort Worth that was removed to federal court.

■■■■ With regard to the third exhibit, Carone's answer was admitted in an effort to bolster ROI's contention that Carone waived his special appearance by entering a general appearance in the other court. Even assuming the trial court erred in admitting the exhibit, Carone was not harmed as a result because we have rejected ROI's waiver argument.

■■■■ Carone contends that the trial court erred in admitting exhibits one and two because they contain hearsay, they were not relevant, and they were not properly authenticated. Rule 901 of the Texas Rules of Evidence states that the "requirement of authentication or identification as

a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." TEX.R. EVID. 901. In this case, Carone was deemed to have admitted that he signed the letters and the asset purchase agreement that were attached to the request for admissions. A matter admitted under rule 198.3 is conclusively established as to the party making the admission. TEX.R. CIVIL PROC. RULE 198.3. Accordingly, the trial court did not abuse its discretion in concluding that the deemed admissions sufficiently authenticated the letters and the asset purchase agreement.

■ "Relevant evidence" means evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without evidence. TEX.R. EVID. 401. In this case, the letters and asset purchase agreement show the nature of the actions taken by Carone in regard to the corporate defendants. Accordingly, the letters and agreement have a tendency to make a determination of whether Carone was the alter ego of the corporation more or less probable.

■ "Hearsay" is a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX.R. EVID. 801(d). As previously noted, the trial court indicated that it would only consider the contents of the letters written by Carone. An admission by a party-opponent is not hearsay. TEX.R. EVID. 801(e)(2). A party's own statement in either an individual or representative capacity that is offered against that party is an admission by a party-opponent. TEX.R. EVID. 801(e)(2)(A). Accordingly, the trial court did not abuse its discretion in admitting exhibits one and two.

### MINIMUM CONTACTS

■ With regard to ROI's general appearance allegation, we recently approved the Fort Worth court's analysis of the fiduciary shield doctrine in *Brown v. General Brick Sales Co.*, 39 S.W.3d 291 (Tex.App.-Fort Worth 2001, no pet.). *See Stern v. KEI Consultants, Ltd.*, 123 S.W.3d 482, 487 (Tex.App.-San Antonio 2003, no pet.). The fiduciary shield doctrine holds that an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation. *Stern*, 123 S.W.3d at 487. Although the fiduciary shield doctrine has not been explicitly adopted by the Texas Supreme Court, the doctrine is applied by intermediate appellate courts to jurisdictional claims based on the theory of general jurisdiction. *Id.* at 488 (quoting *Brown*, 39 S.W.3d at 300). Accordingly, in order for the trial court to have properly denied Carone's special appearance, the record must contain evidence to support the trial court's implied finding of alter ego. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d at 799–800.

■ Alter ego applies when there is such unity between a corporation and an individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice. *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex.1986). "It is shown from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corpora-

tion, and whether the corporation has been used for personal purposes." *Id.* Failure to comply with corporate formalities is no longer a factor in considering whether alter ego exists. TEX. BUS. CORP. ACT ANN. art. 2.21(A)(3) (Vernon 2003); *Howell v. Hilton Hotels Corp.*, 84 S.W.3d 708, 714 (Tex.App.-Houston [1st Dist.] 2002, pet. denied); *Pinebrook Properties, Ltd. v. Brookhaven Lake Property Owners Ass'n*, 77 S.W.3d 487, 499 (Tex.App.-Texarkana 2002, pet. denied). The types of evidence that a court will consider as proof of alter ego include: (1) the payment of alleged corporate debts with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for his personal use; (4) inadequate capitalization; and (5) other failure to keep corporate and personal assets separate. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990); *Goldstein v. Mortenson*, 113 S.W.3d 769, 781 (Tex.App.-Austin 2003, no pet.); *Howell*, 84 S.W.3d at 715; *Pinebrook Properties, Ltd.*, 77 S.W.3d at 500. An individual's standing as an officer, director or majority shareholder of an entity alone is insufficient to support a finding of alter ego. *Goldstein v. Mortenson*, 113 S.W.3d at 781.

In responding to Carone's argument that he did not have sufficient contacts with Texas, ROI cites 9 of the 143 [2] exhibits admitted at the special appearance hearing to support its argument that Carone was an alter ego of the corporate entities. We have not independently reviewed and analyzed the remaining 134 exhibits because that is not our burden. *See Rogers v. Ricane Enters. Inc.*, 772 S.W.2d 76, 81 (Tex.1989) (noting reference to voluminous record insufficient); *Guthrie*

*v. Suiter*, 934 S.W.2d 820, 826 (Tex.App.-Houston [1st Dist.] 1996, no writ) (court not required to sift through 500 page deposition); *Hall v. Stephenson*, 919 S.W.2d 454, 466 (Tex.App.-Fort Worth 1996, writ denied) (single reference to 1,000 pages of enclosures and schedules insufficient). Although ROI does state, "These facts are set forth, at some length, in our Statement of Facts, and we will not repeat them.", the one sentence references to other exhibits in the statement of facts do not apply the law of alter ego to the exhibits or analyze how these exhibits would support such a finding. Rules 38.2(a)(1) and 38.1(h) require an appellee's brief to contain argument supported by citations to the record. Although ROI's brief failed to properly apply the other exhibits mentioned in its statement of facts to its argument, we have considered these exhibits in our analysis of ROI's alter ego claim.

Several of the exhibits cited by ROI are letters or memos signed by Carone as an officer of Oil & Gas Management, Inc. ("OGM") and other entities. Most of the letters and memos are addressed to a vice-president of Security Pacific. The letters and memos are on corporate letterhead with a California address and addressed to Security Pacific in California. None of these letters or memos contain evidence that the separateness of the defendant corporate entities was disregarded.

One of these letters describes the manner in which OGM intends to bill Security Pacific for its services and explains the reason all of the engineers at OGM need to understand the services being provided to Security Pacific to insure that it receives "the maximum technical resources [OGM] can deliver on any given issue, recommendation, or project management." This let-

---

**2.** Exhibit 1 consists of the 141 exhibits attached to Carone's deemed admission. In addition, two other exhibits were admitted as Exhibit 2 and Exhibit 3.

ter is no evidence that Carone is the alter ego of any of the defendant entities.

Another letter describes the nature of the activities OGM had undertaken in providing services to Security Pacific and proposes the development of a structure for managing subcontractors and operators. The letter appears to be suggesting that Security Pacific hire an entity other than ROI to provide strong field support for PNB. The letter recommends that Security Pacific fine tune PNB's management and the operation of PNB's assets. Even if this letter could be interpreted as evidence of an alter ego relationship as between Security Pacific and PNB, it fails to support any finding that Carone as president of OGM was an alter ego of either Security Pacific or PNB.

With regard to ROI's contention that Carone has made "some unknown number of personal trips to Texas to further the business," the cited exhibits fail to show how Carone's trips to Texas resulted in any corporate entity being used for personal purposes.

ROI contends that in Exhibit 37, Carone "candidly confides to the bank that his company has little capital, it is controlled by his family, and that its income is diverted to its 'management team.'" Exhibit 37 is a letter from Carone as president of OGM addressed to Security Pacific in California. First, even if we agreed that the contents of the letter supported Carone's contention, evidence that Carone was the alter ego of OGM would not support an assertion that Carone was the alter ego of the "bank defendants." OGM is not a named defendant in the lawsuit. Second, we conclude that the letter does not support ROI's contention. Instead, the letter explains in detail how the finances of OGM were managed within the corporate structure. The letter explains that Carone and his brother only retained a 51% interest in OGM, despite initially owning 2/3 interest. The letter shows that OGM invests in capital assets as needed. Although the letter states that income from operating management agreements are paid directly to the OGMC operating management team by the entity being managed, this proves that all of the management team, not just Carone, is paid for operating management services on this basis. The letter further states that the working capital requirements are provided out of OGM's case income; therefore, this is no evidence of commingling of assets or funds. Finally, the letter concludes, "To minimize corporate taxes at the end of each quarter a minimum of working capital is retained for earnings and the balance of the income generated is paid out in bonuses to the staff." This shows that OGM's income is paid out to "staff" not just to Carone, and the letter does not evidence inadequate capitalization because the letter states that OGM "does not have nor has it ever had *any* debt or lines of credit."

Exhibit 91 is a letter of intent regarding the acquisition of PNB's assets by Paradigm Oil. ROI contends that the letter of intent shows Carone is individually involved. The letter of intent indicates that Carone and another individual, Douglas McCullum, were to be the sole shareholders of Paradigm Oil, the buyer. Paradigm Oil was to be formed as a Texas corporation and had a San Antonio address. The letter of intent also prohibits the ownership and management of Paradigm Oil from being changed without PNB's consent until the promissory note to be given in payment of the purchase price was paid in full. ROI cites a similar provision in Exhibit 129, the 1993 Asset Purchase Agreement between PNB and Paradigm Oil, which notes that a material inducement to enter into the transaction is that Paradigm Oil be managed, controlled, and

beneficially owned by Carone and McCullum and prohibits the ownership and management from being changed. However, an individual's standing as an officer, director or majority shareholder of an entity alone is insufficient to support a finding of alter ego. *Goldstein*, 113 S.W.3d at 781. Neither the Letter of Intent nor the Asset Purchase Agreement provide evidence that Carone used Paradigm Oil for his personal purposes.

Finally, ROI cites numerous corporate documents showing that Carone is an officer of Finley and provided management services to Paradigm Oil pursuant to a contract. Apart from showing that corporate formalities were maintained, these documents do not provide evidence that Carone used any of the entities for his personal purposes.

Having reviewed the exhibits cited by ROI, we conclude that no evidence was presented to show any of the following: (1) the payment of alleged corporate debts with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for his personal use; (4) inadequate capitalization; and (5) other failure to keep corporate and personal assets separate. *Mancorp, Inc.*, 802 S.W.2d at 228; *Goldstein*, 113 S.W.3d at 781; *Howell*, 84 S.W.3d at 715; *Pinebrook Properties, Ltd.*, 77 S.W.3d at 500. Although the evidence may have shown that Carone was an integral player in the operation and management of the entities, it does not show such unity between Carone and any of the corporate entities that the separateness of the corporation had ceased to exist. Accordingly, based on the evidence cited by ROI, the evidence is insufficient to support the trial court's implied finding of alter ego.

## CONCLUSION

Carone did not waive his special appearance, and the evidence is insufficient to support the trial court's implied alter ego finding. Accordingly, the trial court's order is reversed and the claims against Carone are dismissed for lack of personal jurisdiction.

## SUPPLEMENTAL OPINION ON REHEARING

In our original opinion, we noted that ROI asserted two alternative theories in support of its argument that Carone waived his special appearance. We held, however, that ROI did not properly present these alternative theories because it failed to cite any authority in support of the theories. In its motion for rehearing, ROI contends that we should have addressed the merits of the alternative theories despite the absence of cited authority because it was arguing for the creation of new law. In the interest of justice, we will address the alternative theories.

First, ROI contends that Carone entered an appearance by engaging in flagrant discovery abuse that resulted in sanctions in the nature of deemed admissions. As noted in our original opinion, however, Rule 120a expressly permits the discovery process to proceed without a waiver of a special appearance. TEX.R. CIV. P. 120a. The rule contains no exception for discovery abuse. Furthermore, even if this court were to consider an exception to Rule 120a for discovery abuse, we note that ROI obtained the sanctions by default since Carone was not present at the hearing. Therefore, even if an exception was made under Rule 120a, we are uncertain that such an exception would apply in circumstances involving sanctions by default.

■ Second, ROI contends that Carone answered a lawsuit in Fort Worth without asserting a special appearance.

Carone notes in his reply brief that the answer was not filed until after the lawsuit was removed to federal court, and a notice of removal does not constitute a general appearance. *See Antonio v. Marino,* 910 S.W.2d 624, 629 (Tex.App.-Houston [14th Dist.] 1995, no writ). During the hearing, Carone's counsel stated, "If the federal courts say that they have jurisdiction over an out-of-state resident in a federal court that happens to be located in Texas, that doesn't mean that he's amenable to process and can be sued in every state Court that the state has." We agree with this logic and reject ROI's second alternative waiver theory.

ROI's motion for rehearing is denied.