**Danny Edward HULL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–99–00127–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 14, 2000.

Rehearing Overruled Oct. 12, 2000.

Kenneth W. Smith, Houston, for Appellant.

Carmen Castillo Mitchell, John B. Holmes, Houston, for State.

Panel consists of Justices COHEN, WILSON, and PRICE.*

## OPINION

MURRY B. COHEN, Justice.

A jury found appellant guilty of injury to a child and assessed punishment at 10 years in prison, probated, and a non-probated $10,000 fine. The State moved to revoke appellant's probation for failing to report and for failing to present written verification of employment. Appellant pled true to failure to report and not true to failing to verify employment. The trial court revoked probation and assessed punishment at 10 years in prison. We reverse and remand.

## Analysis

■ In the first point of error, appellant contends he was deprived of his liberty without due process of law because "no tolerance" probation (1) constitutes the judge's commitment to a predetermined outcome, (2) precludes consideration of relevant evidence and of statutory options favoring the defendant, and (3) denies a hearing before an impartial judge. We agree.

As he announced his ruling, the judge stated:

Mr. Hull, I told you when you got probation, if you violated probation in any way, shape, or form I was going to revoke that probation. I am a man of my word, and I am going to carry out what I told you when I gave you this probation. You did not have an option at all to do anything other than every single rule in this probation every step of the way exactly as instructed by me and the probation department.

You know, here you come again. It's all about poor Mr. Hull and his family. This case is and always has been about Marcus King, a three year old child, going to the hospital with a broken rib and a punctured lung because of your conduct.

Now, for reasons that I fail to understand, the jury having found you guilty, gave you the opportunity to have probation. And I gave you every condition of probation that I could think of in order to ensure that you would be strictly monitored and that you would follow these rules, because I told you that you were under zero tolerance, which meant that if you violated in any way, shape or form, you were going to be back here in an orange jumpsuit. You lasted 24 whole days on your probation after you got out of jail before you violated the rules of probation. This is one case where I can right a wrong. My only regret in this situation is that I am limited by the amount of punishment that I can assess you at ten years. But the jury made that choice and I have to live with it and you have to live with it. Having said that, I revoke your probation. I sentence you to ten years confinement in the Texas Department of Criminal Justice, Institutional Division. I will give you credit for your back time. See the bailiff. (End proceedings.)

These remarks show that the judge had committed himself to revoke probation for any violation whatsoever, no matter what exigent circumstances existed. That was error. It rendered him unable to apply the law the legislature enacted. *See* Tex. Code Crim. P. Ann. art. 42.12, § 22(a) (Vernon Supp.2000) (probation may be continued despite violation of terms). The statutory option the judge abandoned in advance was that provided by article 42.12, section 22(a)—the possibility of being continued on probation despite a prov-

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

en violation. Consequently, the "no tolerance" probation here shares the same quality of predetermination that has been consistently disapproved in cases involving pre-announced sentences. *See McClenan v. State,* 661 S.W.2d 108, 110 (Tex.Crim. App.1983) (an arbitrary refusal to consider the entire range of punishment would constitute a denial of due process); *see also Earley v. State,* 855 S.W.2d 260, 262 (Tex. App.—Corpus Christi, 1993), *pet. dism'd as improvidently granted,* 872 S.W.2d 758 (Tex.Crim.App.1994); *Howard v. State,* 830 S.W.2d 785, 787 (Tex.App.—San Antonio 1992, pet. ref'd); *Jefferson v. State,* 803 S.W.2d 470, 471 (Tex.App.—Dallas 1991, pet. ref'd) (all holding that remarks indicating the judge was delivering a promised outcome showed a lack of impartial consideration of both relevant evidence and statutory sentencing options); *Fielding v. State,* 719 S.W.2d 361, 368 (Tex. App.—Dallas 1986, pet. ref'd) (Guittard, C.J., dissenting).

Our law provides many justifications for conduct that would otherwise be criminal. For example, Penal Code Chapter 9, entitled "Justification Excluding Criminal Responsibility," lists a number of them, and a fact finder must be willing to consider them all. "No tolerance" is the opposite of that concept. No tolerance is the absence of discretion, and discretion is the very essence of judging.

Appellant presented unchallenged mitigating evidence. Because the judge declined to consider it, appellant was harmed. Appellant and his wife testified that on Friday, November 6, 1998, the morning appellant failed to report, they went to their child's school upon learning the child had been struck and urinated upon. The State neither contradicted nor impeached this evidence, nor did it argue that appellant and his wife were lying. Appellant became upset and forgot the appointment, but he called his probation officer the same day, spoke to her supervisor that day, and spoke to his probation officer at 7:30 a.m. on the next business day. Mitigating evidence was also presented concerning appellant's failure to produce written documentation of employment. As a condition of probation, appellant had to serve 90 days in jail, beginning July 17, 1998. That period would have ended on Wednesday, October 14, 1998, five days (including a weekend) before appellant's first reporting date of October 19. Although he failed to produce it for his probation officer when he reported on October 19 and 30, 1998, appellant produced uncontroverted written documentation and testimony in court that he was employed during that period. The probation officer testified that of her 120 to 130 cases, only this one was "no tolerance."

Appellant admitted he did not personally report to his probation officer on November 6, 1998. He pled true to failure to report and testified he did not provide timely written verification of employment. That began the judge's work, however; it did not end it. The judge then had to decide (1) whether to excuse appellant's conduct and (2) if not, what to do about it. Those decisions constitute the harder work of judging, and they must be made after hearing and considering the evidence, not before.

█ Due process is denied if a judge is committed in advance to a particular outcome and does not impartially consider the evidence. While Texas law provides the basis for this reversal, the United States Supreme Court has held that a state court criminal defendant has a federal constitutional right not to be arbitrarily denied the full range of statutory discretion that exists under state law. *See Hicks v. Oklahoma,* 447 U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980); *accord Anderson v. Jones,* 743 F.2d 306, 308 (5th Cir.1984). This would include the statutory right to be considered for continued probation despite violation of conditions, especially ones that are minor and well explained. *See* TEX.CODE CRIM. P. ANN. art. 42.12, § 22(a).

■ The State contends appellant waived this complaint by (1) not objecting when probation was imposed to the condition of "no tolerance" and (2) not moving to recuse the judge. We disagree.

"No tolerance" was never listed among the "conditions of community supervision" in the judge's order. It is not mentioned at all in the judge's order. Although the judge apparently told appellant orally, when sentencing appellant to probation, that no violations would be tolerated,[1] the written conditions the judge signed ordered appellant to "abide by **the following conditions**" and that "failure to abide by **these** conditions **may** result in revocation of community supervision. . . ." (Emphasis added.) Because "the following conditions" and "these conditions" did not mention "no tolerance," and because the written statement that violation "may result" in revocation is the opposite of no tolerance, we conclude that "no tolerance" was never a condition of probation. Rather, it was an attitude of the court toward appellant. Even if the words "no tolerance" had appeared in the judge's order, they would not have required appellant to do anything different, *i.e.*, anything not already required by the other conditions. Thus, there was no condition of probation for appellant to object to.

■ Nor did appellant waive the complaint by not moving to recuse the judge. There was no reason to do so until after the judge ruled and immediately ended the trial. When originally sentencing appellant to probation, the judge told appellant orally that a violation "in any way, shape, or form" would result in revocation, but the judge's written order retreated from that warning. It said nothing about "no

tolerance"; instead, it stated that any violation "may result" in revocation, which is true in every case. We conclude that appellant was entitled to rely on the written conditions of community supervision signed by the judge, instead of the judge's oral statement. *See Eubanks v. State*, 599 S.W.2d 815, 817 (Tex.Crim.App.1980) (court's written order controls over oral announcement). That judgment indicated the judge would retain the discretion that the legislature authorized him to exercise on behalf of appellant. Relying on the judge's signed order, as appellant had a right to do, appellant had no incentive to recuse the judge, until the judge spoke the words quoted above. In a similar case, of punishment promised in advance, the Dallas Court stated, "Until the judge assesses punishment the defendant is entitled to assume the judge will perform his solemn duty to assess punishment upon consideration of relevant evidence." *Jefferson*, 803 S.W.2d at 472. "Under these conditions, the defendant could not know until after the judge had assessed punishment that he needed to request recusal."[2] *Id.* For these reasons, the Dallas Court held it was excusable that the defendant never moved to recuse the judge, despite the judge's earlier promised punishment when granting probation. *Id.* By then, a recusal would have been worthless because recusal grants future relief only. A recusal would not have undone the revocation. *Id.*

■ Finally, we hold that a motion for new trial was not required to preserve the error. "A motion for new trial is a prerequisite to presenting a point of error on appeal only when necessary to adduce facts not in the record." TEX.R.APP. P. 21.2. That is not the case here.[3] Nor

---

1. No record of that hearing is before us.

2. We disagree with Justice Taft's statement that *Jefferson* is distinguishable because the trial judge in that case gave less notice than the judge here. In *Jefferson*, the trial judge told the defendant when originally assessing probation that if he violated probation "in any way," it would be revoked. 803 S.W.2d at

471. The Dallas court nevertheless unanimously excused the defendant from making a motion to recuse.

3. That distinguishes this case from those like *Solis v. State*, 945 S.W.2d 300, 301 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd), in which the defendant complained the punish-

would a motion for new trial have allowed the trial judge to cure the error by granting any lesser remedy than is now required.

■ Nor is this error made harmless by appellant's plea of true to one violation and his admission of the other. A proceeding to revoke probation is not like a typical civil or criminal case; in those cases, the fact-finder must rule for the plaintiff or the State if its charges are proved. Revocation of probation is fundamentally different in that. respect. A judge hearing a motion to revoke probation has absolute discretion to deny it, even though the probationer pleads "true," stipulates to a violation, and judicially confesses. *See Ex parte Tarver,* 695 S.W.2d 344, 349 (Tex.App.—Houston [1st Dist.] 1985), *aff'd,* 725 S.W.2d 195 (Tex.Crim. App.1986). Our law expressly authorizes judges to continue probation "after determining that the defendant violated a condition of community supervision...." *See* TEX.CODE CRIM. P. ANN. art. 42.12, § 22(a). Such discretion is frequently exercised in favor of probationers. *See Rogers v. State,* 640 S.W.2d 248, 248–49 (Tex.Crim.App. 1982); *Wright v. State,* 640 S.W.2d 265, 266–67 (Tex.Crim.App.1982); *Hise v. State,* 640 S.W.2d 271, 271–72 (Tex.Crim. App.1982). A judge must not abandon, either before hearing evidence or without considering the evidence, the statutory discretion the legislature has granted him.

The first point of error is sustained.

The judgment is reversed, and the cause is remanded.

En-banc consideration was requested.

A majority of the Justices of the Court did not vote to grant en-banc consideration. *See* TEX.R.APP. P. 41.2(c).

Justice TAFT dissents from the denial of en-banc consideration. Justice

ment was "grossly disproportionate" and thus

NUCHIA joins Justice TAFT'S dissenting opinion from the denial of en banc consideration.

TIM TAFT, Justice, dissenting from denial of en-banc review.

This is not a case in which appellant, Danny ·Edward Hull, violated the terms and conditions of his probation and the trial court surprised appellant by suddenly springing a zero tolerance policy, saying "Gotcha!" The Panel Opinion's rendition of the trial court's remarks before revoking appellant's probation clearly shows that the trial court had admonished appellant at the time probation was assessed that any violation of even a single condition of his probation would result in revocation. Indeed, when appellant took the stand at the revocation hearing, the third question from his attorney was, "At the time that you were granted probation, you were aware that the Judge had placed you on what's called a zero tolerance probation?" Appellant answered that he knew that. The next question elicited that appellant knew what zero tolerance probation meant. Later, appellant's counsel repeated inquiries demonstrating that appellant understood what kind of probation the trial court had given him, and appellant acknowledged that he had taken the trial court seriously. Finally, appellant was asked what he wanted the trial court to do, and he said, "To take off zero tolerance and give me a chance."

As the Panel Opinion set out, appellant . had entered a plea of true to the allegation of failure to report. Appellant's attorney argued that appellant freely admitted and took full responsibility for failing to report. After covering the mitigating and extenuating circumstances, appellant's attorney asked the trial court to continue appellant on probation.

The only defense presented at trial was for appellant to take responsibility for an admitted violation and throw himself on the mercy of the court. Neither appellant

had to present evidence to prove that.

nor his attorney ever mentioned any objection to the trial court's zero tolerance policy, much less that it violated due process. To the contrary, by their actions, appellant and his attorney led the trial court to believe that they accepted the trial court's authority to require a zero tolerance policy, but merely asked that the trial court make an exception in appellant's case due to the extenuating circumstances. Even after the trial court made it clear he was going to proceed to revoke pursuant to his zero tolerance policy, which was prior to the trial court's actually announcing its decision to revoke, neither appellant nor his counsel put the trial court on notice there was any objection to the trial court's procedure.

Having unsuccessfully pursued the strategy of seeking an exception from the trial court's policy at trial, appellant now, for the first time on appeal, challenges the trial court's zero tolerance policy as a violation of due process. To the Panel Opinion's willingness to overlook appellant's failure to preserve error, I must vigorously dissent.

To allow appellant to raise his complaint about the trial court's zero tolerance probation for the first time on appeal is simply not fair to the trial court. We would be engaging in a "Gotcha" procedure against a trial court that had not engaged in such a "Gotcha" procedure with appellant. Our action would abrogate both the letter and spirit of the contemporaneous objection rule. *See Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Crim.App.1977) (holding purposes of the contemporaneous objection rule are to avoid playing "Gotcha" with either the trial court or the opposing party). Particularly in regard to appellant's not moving to recuse the trial court, the Panel Opinion's reliance on a Dallas Court of Appeals opinion to excuse any trial objection for lack of opportunity is unpersuasive.

This is not a case like *Jefferson v. State*, 803 S.W.2d 470 (Tex.App.—Dallas 1991, pet. ref'd). In *Jefferson*, the failure to object was excused under circumstances found to preclude an opportunity to object:

> The following testimony reveals the abrupt nature of the judge's assessment of punishment and thus defendant's inability to recognize that the assessment of punishment would be based on factors other than the evidence.
>
> A. [The trial court] asked the probation man did he promise me anything and he said, yes, 20 years; and [the trial court] said, you know what time it is, 20 years.
>
> We find nothing in this record to indicate that the judge did anything more than ask the probation officer what he promised to this defendant, then assessed that exact punishment period. *Under these conditions, the defendant could not know until after the judge had assessed punishment that he needed to request recusal.* We conclude that appellant did not knowingly waive the right to a fair and unbiased tribunal.

*Id.* at 472 (emphasis added).

Contrast the abruptness of the trial court's sentence in *Jefferson* with the trial court's reminder to appellant in this case of the trial court's previous admonishment about the zero tolerance policy and the trial court's assertion that he was a man of his word, well before the trial court announced its decision to revoke. This was a clear indication that the trial court was about to revoke appellant's probation, as promised.

Lack of opportunity to object to the sentencing procedure in the *Jefferson* case is buttressed by the manner in which the trial court conducted the hearing on Jefferson's motion for new trial. When the trial court began questioning Jefferson, over counsel's objection, counsel objected to the court's procedure, but was overruled and ordered to sit quietly. *Id.* at 471. Such rough treatment certainly would not have encouraged objections at the trial court level. By contrast, the record in this case shows no trial court behavior that

would have discouraged objections to the trial court's procedure. The record in this case simply does not provide any excuse for appellant's not objecting at trial to the trial court's zero tolerance policy.

Accordingly, I respectfully dissent to the denial of en-banc review, which I requested to enforce the most basic of appellate rules, the contemporaneous objection rule.