In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00055-CR
______________________________


REYES DELANGEL MORALES, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 28827-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            When the scheduled date arrived to hear evidence on the State's motion to revoke Reyes
Delangel Morales' community supervision, Morales' court-appointed attorney, Thomas Tibiletti, was
unavailable.


 Tibiletti asked another attorney, Kevin Settle, to stand in as Morales' counsel, and
Settle did so. Morales pled "true" to violating his community supervision by failing to report to his
community supervision officer, failing to maintain a residence within Gregg County, failing to pay
various fees, and failing to complete his community service work. The trial court then revoked
Morales' community supervision and sentenced him to two years' confinement in a state jail facility. 
            On appeal, Morales contends the trial court erred (1) by failing to inquire whether Morales
objected to being represented by substitute counsel and (2) by failing to consider continuing Morales'
community supervision in lieu of imprisonment. We affirm.
Substitution of Counsel Was Harmless Error
            In his first point of error, Morales contends due process requires he be represented by "his"
attorney and the trial court reversibly erred by failing to inquire of Morales whether he consented to
the absence of his attorney of record at the revocation hearing. The Sixth Amendment guarantees
the right to counsel to all indigent defendants accused of serious crimes and misdemeanors. U.S.
Const. amend VI; Gideon v. Wainwright, 372 U.S. 335, 344 (1963). "Although an indigent
defendant does not have the right to counsel of his own choosing, once counsel is appointed, the trial
judge is obliged to respect the attorney-client relationship created through the appointment." Buntion
v. Harmon, 827 S.W.2d 945, 948 (Tex. Crim. App. 1992) (orig. proceeding). "Once counsel has
been validly appointed to represent an indigent defendant and the parties enter into an attorney-client
relationship[,] it is no less inviolate than if counsel is retained." Stearnes v. Clinton, 780 S.W.2d
216, 221–22 (Tex. Crim. App. 1989) (orig. proceeding). Once the attorney-client relationship has
been established, even if counsel has been appointed by the court, the trial court does not have
plenary power to remove that attorney without sufficient cause. Id.; see also Tex. Code Crim. Proc.
Ann. art. 26.04(j)(2) (Vernon Supp. 2004–2005) (attorney appointed shall continue representation
until replaced by other counsel after "finding of good cause is entered").
            The record before us reflects both Tibiletti and Settle met with Morales before the revocation
hearing. All three discussed that Tibiletti would be unavailable for the scheduled hearing and that
Settle was available to substitute as counsel for Morales. During the revocation hearing, Settle made
a professional statement to the trial court, which is a part of the record, that after discussing the
possible substitution, Morales consented to be represented by Settle at the revocation hearing. 
Morales did not object to Settle's representation at any time during the hearing, nor did Morales
otherwise suggest to the trial court that he was unhappy with Settle's performance. 
            Nonetheless, the trial court should not have permitted the substitution, given the status of the
record in this case. Instead, the trial court should have taken the affirmative steps of (1) inquiring
whether there existed independent good cause


 for the replacement of Tibiletti as Morales' court-appointed counsel (such as a real conflict of interest),


 and (2) determining whether Morales would
consent to the withdrawal of his court-appointed attorney (Tibiletti).


 Such a proactive inquiry was
especially important in this case because the record reveals Morales is not a citizen of the United
States and speaks very little English. There is also nothing in the record to indicate Tibiletti had an
ethical conflict in representing Morales; the only conflict was with Tibiletti's schedule. Yet the trial
court did not conduct a hearing to see if the proposed substitution of counsel was justified. 
Accordingly, the lower court erred by allowing Morales to be represented by stand-in counsel at the
revocation hearing without a finding, on the record, (1) that good cause existed to permit Tibiletti's
withdrawal and (2) that Morales affirmatively consented to that withdrawal.
            Having found error, we must then determine whether the error caused reversible harm. See
Tex. R. App. P. 44.2(a). In this case, nothing in the record before us suggests the trial court's error
harmed Morales or otherwise contributed to his conviction or punishment. Morales pled "true" to
violating the terms of his community supervision agreement with the trial court. Morales also
admitted that, shortly after his initial guilty plea, he fled to Mexico and was not recaptured until over
two years later when police located him in McAllen, Texas. In the period during which he had
absconded from Gregg County, Morales did not report his current location or status to his
community supervision officer. In short, Morales satisfied none of the requirements of his
community supervision. And nothing in the record before us suggests Morales was displeased with
Settle's performance as substitute counsel or had any valid reason to be displeased with that
performance. Accordingly, we conclude, beyond a reasonable doubt, that the trial court's error did
not contribute to Morales' conviction or punishment. We overrule Morales' first issue.
The Trial Court Considered Continuing Community Supervision
            In his second point of error, Morales contends the trial court erred by failing to consider
continuing community supervision in lieu of imprisonment. In Hull v. State, 29 S.W.3d 602, 604–07
(Tex. App.—Houston [1st Dist.] 2000), vacated and remanded, 67 S.W.3d 215 (Tex. Crim. App.
2002), the First Court of Appeals held the trial court violated Hull's due process rights by revoking
his community supervision for violating the terms of a "zero tolerance" brand of community
supervision. On petition for discretionary review, the Texas Court of Criminal Appeals held Hull
had failed to preserve the alleged error by not objecting to the "zero tolerance" conditions at the time
he was placed on community supervision. Id.
            The record in the case now before us does not suggest Morales had been placed on a "zero
tolerance" brand of community supervision akin to that in Hull. To the contrary, before receiving
evidence on the State's motion to revoke community supervision, the trial court explained it had
several options available to it if it found Morales had violated the community supervision agreement:
The Court: Upon your plea of true, I must find the accusations true. 
And when I do that, I've got some options. First is do nothing; that is, leave you on
probation as you presently are.
 
The next option is to extend the length of probation for up to an additional one year
or fine you up to a thousand dollars. And the final option is to revoke your probation
and send you to a state jail facility for a period of not less than 180 actual calendar
days, day for day nor more than two actual calendar years, day for day.
 
Do you understand those are the options that I have?
 
Morales: Yes.

The trial court then heard evidence that, immediately after being placed on community supervision,
Morales fled to Mexico and was not heard from again until two years later when he was arrested near
McAllen, Texas, while working in construction. After all the evidence and before pronouncing
sentence, the trial court stated,
The Court: I choose not to reward him for his absolute failure to
comply with any term and condition of probation. I would rather house him in a state
facility for two years than to have him going back and forth between Mexico and the
United States and coming across the river any time he feels like he wants to. I agree
with you, he was a poor candidate for probation.
 
Be that as it may, I do what I have to do, I revoke your probation and I assess your
punishment two calendar years day for day confinement in a state jail facility, giving
you credit for any time spent in jail in connection with this case.

After closely reviewing the record in this case, we believe the trial court did consider the available
options,


 but based on the evidence presented—especially Morales' admission that he chose to
abscond to Mexico before even meeting with his community supervision officer to review the
conditions of supervision—exercised its discretion to revoke Morales' supervision. From the record
presented, we cannot say the trial court abused that discretion.
            We overrule Morales' points of error and affirm the trial court's judgment.


                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          November 5, 2004
Date Decided:             December 17, 2004

Do Not Publish