In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00221-CR


______________________________




SONYA DEWS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 33941-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 On May 26, 2006, Sonya Dews entered a guilty plea to the charge of possession of
methamphetamine in an amount less than one gram. The trial court accepted Dews' plea and
sentenced her to two years' confinement in a state jail facility; the trial court further probated
imposition of the jail sentence and released Dews to community supervision for a period of five
years. Dews then accepted the trial court's judgment, and she affirmatively waived her right to
appeal the probated sentence. 

 Five months later to the day, the trial court received evidence and heard arguments regarding
the State's first amended application to revoke Dews' probated sentence. At this hearing, Dews
admitted both orally and in writing that she had violated the conditions of her community
supervision in six different ways: (1) she failed to report to her community supervision officer in
June, July, and August 2006; (2) & (3) she failed to pay her monthly supervision fee and her assessed
court costs in June, July, and August 2006; (4) & (5) she used amphetamines on or about August 27,
2006, and she used marihuana on or about September 20, 2006; and (6) she failed to perform her
assessed community service work during the months of June, July, and August 2006. The trial court
imposed the original sentence of two years' imprisonment. Dews now appeals. We affirm.

 In her first point of error, Dews contends she was denied her right to due process because the
trial court failed to consider continuing her community supervision in lieu of revoking her probated
sentence and assessing a two-year sentence. In Hull v. State, 29 S.W.3d 602, 604-07 (Tex.
App.--Houston [1st Dist.] 2000), vacated & remanded, 67 S.W.3d 215 (Tex. Crim. App. 2002), the
court of appeals reversed the lower court's judgment revoking community supervision on the basis
that the trial court's policy of "zero tolerance" probation violated due process. Dews now seeks to
strike a parallel between the situation in Hull and the case now on appeal. 

 The Texas Court of Criminal Appeals later vacated and remanded the First Court of Appeals'
decision in Hull. Hull, 67 S.W.3d at 217. The high criminal court's opinion noted Hull had not
objected to the trial court's "zero tolerance" probation policy at the time of the original guilty plea
or at the revocation hearing. Id. Thus, that tribunal concluded Hull had waived his due-process
argument for appellate review. Id.

 In the case now before us, the record reveals Dews did not present the due-process claim she
now seeks to raise on appeal--that the trial court failed to consider the full range of punishment and
therefore violated Dews' right to due process--to the trial court. Rule 33.1 of the Texas Rules of
Appellate Procedure requires that, "as a prerequisite to presenting a complaint for appellate review,"
the party must make a timely request, objection, or other complaint in the trial court, and the party
must pursue that complaint to an adverse ruling. Tex. R. App. P. 33.1; Hull, 67 S.W.3d at 217. As
Dews did not raise this issue before the trial court, we may not now conclude she has preserved it
for our review. We, therefore, overrule Dews' first point of error.

 In her second (and final) point of error, Dews contends the trial court assessed a sentence that
is disproportionate to her crime in violation of Solem v. Helm, 463 U.S. 277, 287-90 (1983). The
record shows the trial court assessed a sentence of two years' imprisonment in a state jail facility, the
maximum sentence authorized by Texas law for Dews' crime. See Tex. Health & Safety Code
Ann.  §  481.102(6)  (Vernon  Supp.  2006)  (methamphetamine  is  penalty  group  1  substance),
§ 481.115(b) (Vernon 2003) (possession of group 1 substance in amount less than one gram is state-
jail felony); Tex. Penal Code Ann. § 12.35(a) (Vernon 2003) (maximum punishment for state-jail
felony offense is two years' imprisonment).

 Texas courts have traditionally held that, as long as the punishment assessed is within the
range prescribed by the Legislature in a valid statute, the punishment is not excessive, cruel, or
unusual. See, e.g., Jordan v. State, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973). Here, Dews'
sentence falls within the applicable range of 180 days' to two years' imprisonment. That, however,
does not end the inquiry. A prohibition against grossly disproportionate punishment survives under
the Eighth Amendment to the United States Constitution apart from any consideration of whether
the punishment assessed is within the range established by the Legislature. U.S. Const. amend.
VIII; see Solem, 463 U.S. at 290; Harmelin v. Michigan, 501 U.S. 957 (1991) (Scalia, J., plurality
op.); Jackson v. State, 989 S.W.2d 842, 845 (Tex. App.--Texarkana 1999, no pet.).

 Solem had suggested, as a three-part test, that an appellate court consider: (1) the gravity of
the offense compared with the harshness of the penalty; (2) the sentences imposed for similar crimes
in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other
jurisdictions. See Solem, 463 U.S. at 292. Harmelin at least raised questions about the viability of
the Solem three-part test. In fact, it was subsequently held that proportionality survived Harmelin,
but that the Solem three-part test did not. See McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir.
1992); Lackey v. State, 881 S.W.2d 418, 420-21 (Tex. App.--Dallas 1994, pet. ref'd). In light of
Harmelin, the test has been reformulated as an initial threshold comparison of the gravity of the
offense with the severity of the sentence, and then, only if that initial comparison created an
inference that the sentence was grossly disproportionate to the offense should there be a
consideration of the other two Solem factors--(1) sentences for similar crimes in the same
jurisdiction and (2) sentences for the same crime in other jurisdictions. McGruder, 954 F.2d at 316;
Lackey, 881 S.W.2d at 420-21.

 Dews' sentence is the maximum authorized by the law applicable in this case, yet it is within
the range determined by the Legislature to constitute an appropriate punishment for this type of
crime. Nothing in this record demonstrates or raises an inference that this sentence was grossly
disproportionate to this offense. Dews presented no evidence of punishments assessed for
methamphetamine possession in Gregg County or elsewhere within this appellate district, nor does
the record show she presented evidence to the trial court of punishments for this offense that have
been assessed in other parts of Texas or in other jurisdictions outside of Texas. As such, Dews has
not provided this Court with a record with which we may assess the validity of the contention now
raised: that her sentence was constitutionally disproportionate to the offense for which she was
convicted and for which her community supervision was revoked. Accordingly, we must overrule
her final point of error.

 Finding no reversible error, we affirm the trial court's judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: May 9, 2007

Date Decided: May 10, 2007


Do Not Publish




mum of 1.5
seconds for Timothy to have actually observed, focused, and responded to Jennifer's
jumping on the hood by braking-leaving less than one second before Timothy's vehicle
reached the 75-foot marker. Johnson believed, however, it may have taken Timothy as
many as 4.5 seconds to react to Jennifer's jumping on the hood. Thus, because Timothy
had insufficient time before Jennifer sustained her fatal injuries to both be aware of the
danger his driving posed to Jennifer and also consciously disregard that danger, he lacked
the requisite criminal intent to commit the crime of manslaughter. The State did not
present expert testimony to contradict Johnson's theories. 

 Timothy cites Alford v. State, 866 S.W.2d 619, 624 n.8 (Tex. Crim. App. 1993), to
support his position that, because there was expert testimony Jennifer's death was the
result of an accident and because the State presented no evidence to directly undermine
the expert's testimony, the State's evidence is insufficient to overcome the evidence of
accident and insufficient to support a manslaughter conviction. In Alford, the defendant
claimed the trial court's jury charge improperly shifted the burden of proof to him to show,
by a preponderance of the evidence, he was under duress when he committed a robbery. 
Id. at 621. Alford argued that the charge delegated a burden of proof to both parties on
the same issue by requiring the state to prove voluntariness beyond a reasonable doubt,
yet requiring Alford, in proving his affirmative defense of duress, to establish that his
actions were involuntary by a preponderance of the evidence. Id. The Texas Court of
Criminal Appeals' decision in Alford first noted that the state need not prove voluntariness
unless the evidence raises the issue of accident, but then went on to analyze what
constituted voluntary conduct. Id. at 624 n.8. The Alford court held that the term
"voluntarily," for the purpose of establishing criminal culpability, means "the absence of an
accidental act, omission or possession." Id. at 624. More importantly to the disposition of
the case now before us, however, is the Alford decision's limitation of the term
"voluntariness" to the actor's own physical bodily movements. Id. In other words, when
an accidental act is at issue, a defendant must claim his or her own physical bodily
movements "were accidental" to raise a defense of accident. Id.

 Alford is not applicable to this case. First, the issue in Alford was whether the trial
court erred in giving a jury instruction shifting the burden of proof on the affirmative defense
of duress. The issue raised in the case now before us is sufficiency of the evidence. 
Second, Timothy does not claim that his own physical movements were accidental so as
to justify evidence of accident under the language of Alford. Instead, he contends the
expert's testimony establishes he had insufficient time to form the culpable mens rea
necessary for the crime. 

 Timothy's argument assumes the jury must believe the testimony presented by his
expert witness. Juries, however, are free to believe or disbelieve all or any part of a
witness' testimony. Swearingen, 101 S.W.3d at 98. The jury in this case could have
reasonably disbelieved all or part of Johnson's testimony. Johnson testified Timothy may
have had some time, albeit a very short time, to react. He also opined Timothy may not
have had time to react. The jury's verdict suggests it resolved the apparent conflict in
Johnson's opinions in favor of the State.

 Moreover, some of Johnson's opinions of the amount of time it would take a person
in Timothy's position to react were based on the average reaction time to apply the brakes. 
But Timothy was charged with recklessly accelerating when Jennifer jumped on the hood. 
It is reasonable to assume the time required to react by accelerating could be less than that
required to hit the brakes, especially if the driver's foot was already on the accelerator, as
Timothy's apparently was, since his car was already moving forward.

 The jury could also have looked to the circumstances surrounding the incident to
determine Timothy did, in fact, have time to react after Jennifer jumped on the hood of the
car. Linda Easterling testified, "As Jennifer jumped on the car, the car accelerated and
veered over to the left hand lane-the opposing lane. . . . [Jennifer] jumped on about here
[indicating on a map], and when she jumped on [the car], he punched the gas and went
over sideways." "When [Timothy] veered over, you know, he had to veer back or go over
through the neighbor's yard. He had to come back to the right to be going the right
direction." Throughout the remainder of her testimony, Easterling continued to repeat her
observation that Timothy "punched the gas" after Jennifer jumped on the hood. We
believe from this testimony a reasonable jury could conclude that Timothy was aware of
the danger his driving posed for Jennifer, but that he nonetheless consciously disregarded
that danger in his attempt to throw Jennifer off the hood of the car by veering left to right
while suddenly accelerating.

 Additionally, the jury saw a videotaped statement by Timothy in which he admitted
he knew Jennifer had been hurt to some degree, that he returned to the scene without
stopping, and that he then "went out to eat." Easterling, Cindy McDonald, and Ronald
Friesen, both also neighbors, testified concerning Timothy's failure to stop when he
returned to the scene where his wife lay injured. Such conduct suggests an awareness of
criminal conduct, as well as conscious indifference to its consequences. See, e.g., Valdez
v. State, 623 S.W.2d 317, 321 (Tex. Crim. App. [Panel Op.] 1979) (op. on reh'g) (flight from
scene of crime is circumstance from which inference of guilt may be drawn) (cited favorably
by Roberson v. State, 80 S.W.3d 730, 737 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd)). 
The jury could also infer criminal intent from the evidence that Timothy did not go to the
hospital after receiving the telephone call informing him Jennifer was in the hospital and
"it didn't look good."

 We conclude there is evidence from which a jury could have found, beyond a
reasonable doubt, Timothy had sufficient time to both realize the danger his driving,
including sudden acceleration, posed to Jennifer and to consciously disregard that danger. 
Accordingly, the evidence is legally sufficient to support the conviction for manslaughter.

 We affirm the judgment.


 Donald R. Ross

 Justice



Date Submitted: July 10, 2003

Date Decided: August 7, 2003 


Do Not Publish

1. The trial court granted the State's motion to consolidate the manslaughter case with
the failure to stop and render aid case for purposes of the jury trial. Both cases, however,
were appealed separately. The parties have chosen to brief both cases together; we,
however, will address each case by way of separate opinion. See Paslay v. State, No. 06-02-00112-CR (Tex. App.-Texarkana, Aug. 7, 2003, no pet. h.) (not designated for
publication).