In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00019-CV


______________________________




MILACRON INC., Appellant



V.



PERFORMANCE RAIL TIE, L.P., Appellee




 


On Appeal from the 62nd Judicial District Court


Lamar County, Texas


Trial Court No. 75389




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Moseley



O P I N I O N



 Delaware corporation Milacron Inc. appeals the denial of its special appearance filed during
trial. We affirm the trial court's ruling that Milacron Inc. waived its special appearance for a variety
of reasons, including its neglect of the Texas Rules of Civil Procedure. 

I. Procedural Background: The Games Begin

 Performance Rail Tie, L.P., brought suit against Milacron Inc., which Performance alleged
had manufactured an extruder component contained within a machine built to produce composite
railroad ties. The extruder component malfunctioned, causing an explosion which severely damaged
the railroad tie machine. After filing suit, Performance had Milacron Inc. served with citation. In
response, Performance received an answer from Milacron Marketing Company (not then yet sued
by Performance), which purported to unilaterally substitute itself as the proper party to the suit in lieu
of Milacron Inc. Performance subsequently amended its petition several times to include both
Milacron Marketing Company and Milacron Inc. Despite the amended pleadings (which contained
an amended style and included the names of both entities as party defendants), no special exception
was filed by Milacron Inc. (1) Instead, all pleadings and discovery documents were executed either by
"Milacron Marketing Company" or as "Milacron Marketing Company incorrectly sued as Milacron,
Inc." 

 Although the defendants had sought to delay it, the case proceeded to trial with opening
statements commencing on January 14, 2008. Until that day, nothing in the record suggested that
Milacron Inc. had attempted to alert the trial court or Performance to the issue of personal
jurisdiction. Unfortunately, this Court was not presented with any reporter's record detailing the
crucial facts surrounding the filing of the special appearance. However, oral arguments at appeal
suggested that after opening statements in the trial began, the same attorneys who appeared for
Milacron Marketing Company presented the trial court with a motion filed on behalf of Milacron Inc.
wherein it sought to make a special appearance. Attached to this motion was a document (unsigned
at that point) which would, if signed, be an affidavit in support of a special appearance for Milacron
Inc. that set out basic facts which, if proven, would tend to support the lack of jurisdiction over
Milacron Inc. This document was subsequently executed by the affiant and refiled. There is no
record to indicate that Milacron Inc. requested a hearing on its special appearance or objected to any
failure to rule on it. The parties proceeded to a trial on the merits, after which the trial court entered
an order denying Milacron Inc.'s special appearance, finding that Milacron Inc. had waived it.

II. Standard of Review 

 Whether the trial court had personal jurisdiction over Milacron Inc. is a question of law. 
BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002); Conner v.
ContiCarriers & Terminals, Inc., 944 S.W.2d 405, 411 (Tex. App.--Houston [14th Dist.] 1997, no
writ). However, the resolution of that question is preceded by the analysis of underlying factual
disputes. Marchand, 83 S.W.3d at 794; Conner, 944 S.W.2d at 411. The standard of review to
determine the appropriateness of the trial court's resolution of those facts is an ordinary sufficiency
of the evidence review. Conner, 944 S.W.2d at 411. Thus, when we review this trial court's order
denying Milacron Inc.'s special appearance, we review the findings of fact for legal and factual
sufficiency, but we review de novo the conclusions of law drawn from those facts. See id.; CNOOC
Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd., 222 S.W.3d 889, 894 (Tex. App.--Dallas 2007, pet.
denied); Carone v. Retamco Operating, Inc., 138 S.W.3d 1, 6 (Tex. App.--San Antonio 2004, pet.
denied). Disputed fact issues relating to personal jurisdiction will be found in support of the trial
court's judgment. Hotel Partners v. Craig, 993 S.W.2d 116, 120 (Tex. App.--Dallas 1994, writ
denied) (citing Zac Smith & Co. v. Otis Elevator Co., 734 S.W.2d 662, 666 (Tex. 1987)). 

III. Milacron Inc. Waived Its Special Appearance

 To promote judicial economy, Rule 120a(1) of the Texas Rules of Civil Procedure mandates
that a special appearance be filed "prior to motion to transfer venue or any other plea, pleading or
motion." Tex. R. Civ. P. 120a(1). This is sometimes referred to as the "due-order-of-pleading"
requirement. Exito Electronics Co. v. Trejo, 142 S.W.3d 302, 305 (Tex. 2004). The rule encourages
personal jurisdiction issues to be disposed of early in litigation and states "[e]very appearance, prior
to judgment, not in compliance with this rule is a general appearance."

 Texas law clarifies that a special appearance is waived through participation in the trial. 
Bullock v. Briggs, 623 S.W.2d 508, 511 (Tex. App.--Austin 1981, writ ref'd n.r.e.). A specially
appearing defendant may not go to trial on the merits of the case without first obtaining a ruling on
his special appearance. Bruneio v. Bruneio, 890 S.W.2d 150, 154 (Tex. App.--Corpus Christi 1994,
no writ); Seeley v. Seeley, 690 S.W.2d 626, 628 (Tex. App.--Austin 1985, no writ). For this reason,
Rule120a requires that the specially appearing defendant timely request a hearing, specifically bring
that request to the trial court's attention, and secure a ruling on the preliminary question of personal
jurisdiction. Tex. R. Civ. P. 120a; Hart v. State, No. 03-02-00542-CV, 2003 Tex. App. LEXIS 1747,
at *6 (Tex. App.--Austin Feb. 27, 2003, no pet.) (mem. op.). 

 It is the responsibility of a defendant which attempts to rely upon a special appearance to
request a hearing and secure a ruling on the preliminary question of personal jurisdiction. Bruneio,
890 S.W.2d at 154. Not only must a specially appearing defendant request a hearing on the
determination of the special appearance, it must specifically call that request to the trial court's
attention. Id. A defendant waives his special appearance by not timely pressing for a hearing. Id.;
Steve Tyrell Prods., Inc. v. Ray, 674 S.W.2d 430, 436-37 (Tex. App.--Austin 1984, no writ). It is
inappropriate, especially when considering judicial economy, to litigate the special appearance in
connection with the trial of the matter. Bruneio, 890 S.W.2d at 154. 

 Rule 120a(4) provides that if an order is entered denying the special appearance, the objecting
party "may thereafter appear generally for any purpose" without waiver of the special appearance. 
Tex. R. Civ. P. 120a(4). However, if the objecting party allows a trial to proceed without obtaining
a ruling on its Rule 120a motion, the special appearance is waived and the party has consented to the
court's jurisdiction. Morris v. Morris, 894 S.W.2d 859, 862 (Tex. App.--Fort Worth 1995, no writ).

 Milacron Inc. was named as a party in Performance's lawsuit and was represented by counsel
who appeared in the courtroom to defend that lawsuit on January 14. Although disputed,
Performance's briefing states that "Milacron Defendants" answered ready for trial. Since there is no
record indicating otherwise, this disputed fact issue will be resolved in favor of the trial court's
ruling. (2) Craig, 993 S.W.2d at 120. Milacron Inc. waited until after opening statements to file its
special appearance and failed to request a hearing and secure a ruling on the special appearance
before proceeding to trial on the merits. Since Milacron Inc. was present through its attorneys and
allowed the case to be tried on the merits before the trial court ruled on its special appearance, it
effectively entered a general appearance. Seeley, 690 S.W.2d at 627-28. 

 We need not address the issue of whether Milacron Inc. waived its special appearance
through pleadings and discovery filed by its attorneys which were conducted under the name
"Milacron Marketing Company incorrectly sued as Milacron, Inc." We do point out, however, that
contrary to the rules prescribed by the Texas Rules of Civil Procedure, Milacron Inc. did not
complain about service to the trial court and did not file a special exception or verified plea subject
to a special appearance. Instead, it attempted to unilaterally substitute a party, used the same
attorneys to defend the lawsuit and participated in discovery through that substituted party, saw that
its attorneys signed off on pleadings that included Milacron Inc. in the style of the case, failed to
answer amended petitions containing both Milacron Marketing Company and Milacron Inc.,
prepared a special appearance and affidavit immediately prior to or at trial, and decided to spring the
special appearance upon the court and the parties at the last minute. Although this could be
attributed to error on the part of the defendants, it smacks more of procedural gamesmanship,
conduct we cannot condone.

 We affirm the judgment of the trial court.




 Bailey C. Moseley

 Justice


Date Submitted: August 13, 2008

Date Decided: August 27, 2008


1. For the first time on appeal, Milacron Inc. argues that Performance brought suit against
"Milacron, Inc., an entity that does not exist" (pointing out that the true name of the corporation does
not contain a comma). Since no special exception was filed to point out to the trial court the
existence of the superfluous comma, we reject Milacron Inc.'s argument that suit was improperly
brought against it. 
2. The burden was on Milacron Inc. to present a sufficiently complete record that clearly
demonstrated the error of which it complained. Since Milacron Inc. did not request a reporter's
record and the Court only has a partial record before it (the portion filed by Performance), every
reasonable presumption will be indulged in favor of the trial court's ruling. See Tex. R. App. P.
38(h); Arredondo v. Rodriguez, 198 S.W.3d 236, 239 (Tex. App.--San Antonio 2006, no pet.);
Cooper v. Bowser, 610 S.W.2d 825, 828 (Tex. Civ. App.--Tyler 1980, no writ); Meyer v. Worden,
530 S.W.2d 904, 906 (Tex. Civ. App.--Houston [1st Dist.] 1975, writ ref'd n.r.e.); Coleman v. Pac.
Employers Ins. Co., 484 S.W.2d 449, 454 (Tex. Civ. App.--Tyler 1972, writ ref'd n.r.e.) (op. on
reh'g); Wright v. Mack Motor Truck Corp., 336 S.W.2d 831, 833 (Tex. Civ. App.--Houston 1960,
no writ).


;         Having found error, we must then determine whether the error caused reversible harm. See
Tex. R. App. P. 44.2(a). In this case, nothing in the record before us suggests the trial court's error
harmed Morales or otherwise contributed to his conviction or punishment. Morales pled "true" to
violating the terms of his community supervision agreement with the trial court. Morales also
admitted that, shortly after his initial guilty plea, he fled to Mexico and was not recaptured until over
two years later when police located him in McAllen, Texas. In the period during which he had
absconded from Gregg County, Morales did not report his current location or status to his
community supervision officer. In short, Morales satisfied none of the requirements of his
community supervision. And nothing in the record before us suggests Morales was displeased with
Settle's performance as substitute counsel or had any valid reason to be displeased with that
performance. Accordingly, we conclude, beyond a reasonable doubt, that the trial court's error did
not contribute to Morales' conviction or punishment. We overrule Morales' first issue.
The Trial Court Considered Continuing Community Supervision
            In his second point of error, Morales contends the trial court erred by failing to consider
continuing community supervision in lieu of imprisonment. In Hull v. State, 29 S.W.3d 602, 604–07
(Tex. App.—Houston [1st Dist.] 2000), vacated and remanded, 67 S.W.3d 215 (Tex. Crim. App.
2002), the First Court of Appeals held the trial court violated Hull's due process rights by revoking
his community supervision for violating the terms of a "zero tolerance" brand of community
supervision. On petition for discretionary review, the Texas Court of Criminal Appeals held Hull
had failed to preserve the alleged error by not objecting to the "zero tolerance" conditions at the time
he was placed on community supervision. Id.
            The record in the case now before us does not suggest Morales had been placed on a "zero
tolerance" brand of community supervision akin to that in Hull. To the contrary, before receiving
evidence on the State's motion to revoke community supervision, the trial court explained it had
several options available to it if it found Morales had violated the community supervision agreement:
The Court: Upon your plea of true, I must find the accusations true. 
And when I do that, I've got some options. First is do nothing; that is, leave you on
probation as you presently are.
 
The next option is to extend the length of probation for up to an additional one year
or fine you up to a thousand dollars. And the final option is to revoke your probation
and send you to a state jail facility for a period of not less than 180 actual calendar
days, day for day nor more than two actual calendar years, day for day.
 
Do you understand those are the options that I have?
 
Morales: Yes.

The trial court then heard evidence that, immediately after being placed on community supervision,
Morales fled to Mexico and was not heard from again until two years later when he was arrested near
McAllen, Texas, while working in construction. After all the evidence and before pronouncing
sentence, the trial court stated,
The Court: I choose not to reward him for his absolute failure to
comply with any term and condition of probation. I would rather house him in a state
facility for two years than to have him going back and forth between Mexico and the
United States and coming across the river any time he feels like he wants to. I agree
with you, he was a poor candidate for probation.
 
Be that as it may, I do what I have to do, I revoke your probation and I assess your
punishment two calendar years day for day confinement in a state jail facility, giving
you credit for any time spent in jail in connection with this case.

After closely reviewing the record in this case, we believe the trial court did consider the available
options,


 but based on the evidence presented—especially Morales' admission that he chose to
abscond to Mexico before even meeting with his community supervision officer to review the
conditions of supervision—exercised its discretion to revoke Morales' supervision. From the record
presented, we cannot say the trial court abused that discretion.
            We overrule Morales' points of error and affirm the trial court's judgment.


                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          November 5, 2004
Date Decided:             December 17, 2004

Do Not Publish