**Affirmed and Memorandum Opinion filed September 23, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00207-CR

**MONIQUE DAVIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 04CR2941**

## M E M O R A N D U M   O P I N I O N

Appellant Monique Davis appeals from the trial court's revocation of her deferred adjudication community supervision for felony theft. The trial court found that appellant failed to report to her probation officer for nine months and failed to pay restitution and fees. We hold that the trial court did not abuse its discretion in revoking appellant's community supervision, and we affirm.

# I. BACKGROUND

Appellant pleaded guilty to felony theft and was placed on deferred adjudication community supervision for five years beginning in May 2007. The State filed a motion to adjudicate and revoke community supervision in February 2012. The State filed an amended motion in January 2013, alleging violations as follows:

4. Said Defendant has failed to report in person to the G.C.C.S.C.D. [Galveston County Community Supervision and Corrections Department] for the months of January, September, October, November, and December 2011; January, February, March, and April 2012;

12. Said Defendant did fail to pay Supervision fees as ordered, and is currently $2400.00 in arrears;

13. Said Defendant did fail to pay Cost of Court as ordered, and is currently $418.00 in arrears;

15. Said Defendant did fail to pay restitution as ordered, and is currently $3777.21 in arrears;

16. Said Defendant did fail to reimburse Galveston County for compensation of appointed counsel as ordered, and is currently $270.00 in arrears;

16A. Said Defendant did fail to pay Crime Stoppers Program payment as ordered, and is currently $25.00 in arrears.

The trial court held a hearing, where appellant pleaded "true" to violation number four and "not true" to the remainder.

Jesus Venegas, appellant's probation officer as of September 2012, testified about documents in appellant's file and how she failed to report for the months identified in the alleged violation number four. Venegas confirmed that appellant had been ordered to pay $5,506.31 in restitution and she had paid $1,729 during the period of her community supervision. Venegas also confirmed the arrearages for the various alleged violations related to fees and restitution. Since Venegas had

2

been supervising her, appellant had been unemployed and seeking employment; she had also been reporting to Venegas monthly.

Appellant testified that she did not report as required because she was upset with her then-current probation officer, Amis Carlisle. She testified that he was "rude," and she sent him letters explaining as such. The letters were admitted at the hearing. She wrote to Carlisle in November 2011 regarding "why [she] decided to not come to anymore meeting[s]." She complained that Carlisle "talk[ed] to me like I had a tail," and he "wouldn't let me talk, and told me that [he] was going to have a motion to revoke, and I would lose my job because I didn't bring a payment." She testified at the hearing that Carlisle had said if she did not make a payment, then "he would go on the job and have me fired."

She explained in her November 2011 letter that she "decided to resign my position with the school to save me the embarrassment of being arrested." She explained, "The issue I have is the way I was talk[ed] to, and how I was treated." She testified that she resigned from the job she obtained as a teacher's aide "[b]ecause I didn't want him to come onto my job. . . . [t]o lie and have me fired." She testified, "I wasn't going to be embarrassed. He didn't know nothing about me like that." She testified that, rather than being employed, she had been volunteering for a nonprofit she founded, and she did not have the ability to make payments on the remainder of the restitution and fees.

On cross, the State inquired about her failures to report to probation:

Q. And you know you were supposed to go to probation every month?

A. Yes.

Q. You know you could go to prison for up to two years if you didn't go to probation?

A. Yes.

Q. Even if you had a disagreement with Mr. Carlisle?

A. Yes.

. . . .

Q. And you chose not to go?

A. Yes.

The State asked more questions about appellant's employment:

Q. Were they going to pay you?

A. Yes.

Q. But you resigned?

A. Yes.

Q. Because Mr. Carlisle was rude to you?

A. Yes.

Q. You realize not going to probation and not working and not paying your fees could result in you going to prison for up to two years? Do you realize that?

A. Yes.

Q. And you still chose to do that?

A. Yes.

On redirect, appellant admitted that she was wrong not to report to Carlisle. Even though she was upset with Carlisle, she handled the situation "very poorly." During closing arguments, the State acknowledged that appellant did not have a well-paying job, and the State focused on her failure to report: "The biggest problem, Judge, is she just didn't report to Probation."

Immediately before orally pronouncing revocation of appellant's community supervision, the trial court explained:

Well, to say that she has really done well on probation for any period of time is a misstatement. I see on my docket sheet that, well, first of all, she asked to meet with the Judge in her letter that's marked—I don't have the letters. Here we go. Defendant's 5, sent a letter

4

February 17th, 2009, asking to meet with the Judge. She met with the Judge on March 26th, 2009, at an administrative hearing. And at that time I told her that she was desperately behind on restitution; and I admonished her to pay her restitution and catch up and gave her another shot at probation even then instead of filing a motion to revoke her probation. And it was—the probation officer gave her a chance to come in here and talk to me about it. It doesn't look like this business about restitution has ever hit home with the Defendant. And then certainly to miss nine months of reporting, well, that just ain't going to fly.

The court found all of the State's alleged violations true, revoked appellant's community supervision, and assessed punishment at eighteen months' confinement.

On appeal, appellant raises two issues: (1) the trial court abused its discretion in revoking her probation, thus violating her right to due process; and (2) the trial court prejudged her, thus violating her rights to due course of law and due process. Appellant contends the second issue has been "subsumed" in the first, so she briefs these two issues together. We now address each separately, however, because different considerations apply.

## II. REVOCATION OF COMMUNITY SUPERVISION

In her first issue, appellant contends the trial court abused its discretion in revoking her community supervision by (1) "ignoring unrebutted charges that Appellant 'failed to report' because of verbal abuse by the probation officer, i.e., threats to have her fired from her employment if she did not bring in more money"; and (2) failing "to recognize that Appellant clearly was not in a position to pay all of the fees and restitution imposed." We hold that the trial court did not abuse its discretion by revoking appellant's community supervision because of her failure to report and failure to pay fees and restitution.

We review a trial court's decision to revoke probation (or deferred adjudication community supervision) for an abuse of discretion, taking into account the sufficiency of the evidence supporting the basis for revocation. *See State v. Hacker*, 389 S.W.3d 860, 864–65 (Tex. Crim. App. 2013); *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Hacker*, 389 S.W.3d at 865. The State need only prove one ground for revocation by a preponderance of the evidence. *Id.*; *see also Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012) ("[P]roof of a single violation will support revocation.").

Because revocation of probation implicates due process, it may not be arbitrarily withdrawn. *Leonard v. State*, 385 S.W.3d 570, 576 (Tex. Crim. App. 2012). Thus, probation may not be revoked for an impermissible or unconstitutional reason. *See id.* at 573, 583 (revocation based on illegal discrimination, reliance on inadmissible polygraph evidence, or "mere caprice" would violate due process); *see also Dansby v. State*, 398 S.W.3d 233, 239–40 (Tex. Crim. App. 2013) (revocation for invoking Fifth Amendment privilege is unconstitutional); *Gipson v. State*, 383 S.W.3d 152, 157 (Tex. Crim. App. 2012) (revocation for failure to pay fines without considering the reasons for the probationer's inability to pay or alternative measures would violate the United States Constitution) (citing *Bearden v. Georgia*, 461 U.S. 660, 665 (1983)).

## A.    Failure to Report

Appellant pleaded "true" to the allegation that she failed to report for nine months, including eight consecutive months. Generally, appellant's failure to report is a sufficient basis for the trial court's decision to revoke her community supervision. *See, e.g., Flournoy v. State*, 589 S.W.2d 705, 707, 709–10 (Tex. Crim. App. [Panel Op.] 1979) (no abuse of discretion to revoke for failing to report

6

for nine months over a period of about four years); *Greer v. State*, 999 S.W.2d 484, 489 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (no abuse of discretion to revoke for failing to report for a single month); *Guerra v. State*, 665 S.W.2d 412, 413 (Tex. App.—Corpus Christi 1983, no pet.) (no abuse of discretion to revoke for failing to report for three consecutive months despite probationer's excuse that he was a "slow learner" and his failure to report was not intentional or willful; probation officer testified that appellant understood his obligation to report).

Appellant contends that the trial court abused its discretion by revoking on this basis because her probation officer verbally threatened to have her fired if she did not pay her fees and restitution. However, the trial court was the judge of her credibility and could have disbelieved her. *See Hacker*, 389 S.W.3d at 865. And by appellant's own evidence, she failed to report for many months after she resigned her job. At that point, any verbal threat to have her fired for not paying restitution would have become moot, yet she still failed to report. Her self-serving explanation also could not have justified her failure to report **before** the alleged verbal threat—in January 2011.

She testified at the hearing that she understood her obligation to report, she understood that not reporting could result in revocation, and she did not report, which was a very poor decision. Thus, appellant was afforded due process, and the trial court did not abuse its discretion by revoking appellant's deferred adjudication community supervision based on her failure to report for nine months. *See, e.g.*, *Flournoy*, 589 S.W.2d at 709–10.

## B.    Failure to Pay Fees and Restitution

Regarding revocation based on the failure to pay fees and restitution, the United States Supreme Court has held that "it could be unconstitutional to deprive a defendant of his liberty when he was unable to pay." *Gipson*, 383 S.W.3d at 157.

7

However, it does not offend due process to revoke probation when the probationer "'willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay.'" *Id.* at 156 (quoting *Bearden v. Georgia*, 461 U.S. 660, 672 (1983)).

The trial court heard evidence that appellant quit her job as a teacher's aide because her probation officer was rude to her and she did not want to be embarrassed, and she was unemployed thereafter and did not pay her fees and restitution. Further, the trial court had warned her three years before the State's initial motion to revoke that she was delinquent on her restitution and needed to catch up. Based on the evidence that appellant quit her job after the trial court's admonishment to pay restitution, the court could have concluded that appellant did not make sufficient bona fide efforts to acquire the resources to pay her fees and restitution. *See Lively v. State*, 338 S.W.3d 140, 146 (Tex. App.—Texarkana 2011, no pet.) (no abuse of discretion to revoke probation because the trial court could have found that the probationer failed to make sufficient bona fide efforts to acquire the resources to pay his restitution and fines when there was evidence that the probationer was a carpenter but had not sought employment in that field).

Appellant was afforded due process, and the trial court did not abuse its discretion for revoking appellant's deferred adjudication community supervision based on her failure to pay fees and restitution.

Appellant's first issue is overruled.

### III. PREJUDGMENT

In her second issue, appellant contends the trial court prejudged her, and she claims that she did not need to present this argument to the trial court to preserve error for review. We disagree with appellant's preservation argument.

Appellant contends that the record is "clear that from the time of an administrative hearing on March 29, 2009, the trial court engaged in a form of zero tolerance adjudication, and enforced that policy in revoking Appellant." In *Hull v. State*, the Court of Criminal Appeals held that an appellant must raise in the trial court a complaint that the trial court engaged in a "zero tolerance" policy of revoking probation. *See* 67 S.W.3d 215, 218 (Tex. Crim. App. 2002).[1] Appellant suggests that the error-preservation requirement from *Hull* was overruled *sub silentio* by *Leonard v. State*, 385 S.W.3d 570 (Tex. Crim. App. 2012). Appellant contends that "the *Leonard* standard of review is that due process is now an integral part of the abuse-of-discretion inquiry."

However, even before *Hull*, due process was "integral" to review of whether a trial court abused its discretion in revoking probation. *See, e.g.*, *DeGay v. State*, 741 S.W.2d 445, 450 (Tex. Crim. App. 1987) ("The central issue to be determined in reviewing a trial court's exercise of discretion in a probation revocation case is whether the probationer was afforded due process of law."), *quoted in Leonard*, 385 S.W.3d at 577. Accordingly, we see nothing in *Leonard* that overrules the holding in *Hull*. Indeed, in *Leonard* the probationer objected to the admission of evidence of his polygraph examinations during the revocation hearing. *See Leonard*, 385 S.W.3d at 573. An appellant must still object in the trial court to preserve constitutional arguments relating to the revocation of probation. *See Gipson v. State*, 428 S.W.3d 107, 110–11 (Tex. Crim. App. 2014) (Alcala, J., concurring) (noting that a *Bearden* inability-to-pay complaint must be preserved in the trial court).

---

[1] The First Court of Appeals suggested that a trial court's abandonment of its statutory discretion and enforcement of a "zero tolerance" policy of revoking probation—either before hearing evidence or without considering the evidence—would violate a probationer's due process right. *See Hull v. State*, 29 S.W.3d 602, 605, 607 (Tex. App.—Houston [1st Dist.] 2000), *rev'd on other grounds*, 67 S.W.3d 215 (Tex. Crim. App. 2002).

Because appellant did not complain to the trial court about any "zero tolerance" policy, she has failed to preserve error and cannot raise the issue for the first time on appeal. *See* Tex. R. App. P. 33.1; *Hull*, 67 S.W.3d at 218.

Appellant's second issue is overruled.

## IV.  CONCLUSION

The trial court had multiple independent bases for revoking appellant's deferred adjudication community supervision, and the trial court did not abuse its discretion regarding any of them.  Having overruled both of appellant's issues, we affirm the trial court's judgment.

/s/        Sharon McCally
            Justice

Panel consists of Justices McCally, Brown, and Wise.

Do Not Publish — TEX. R. APP. P. 47.2(b).